565 So.2d 814 (1990)
Stephen M. REEP, Appellant,
v.
Susan T. REEP, Appellee.
No. 90-116.
District Court of Appeal of Florida, Third District.
July 31, 1990.
*815 Howard S. Miller, Hollywood, for appellant.
Deborah A. White, Miami, for appellee.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Stephen Reep [husband] appeals from the dismissal of his Petition for Modification of Alimony. For the following reasons, we reverse.
The husband and wife were divorced in June, 1987. The trial court ordered the husband, a pilot with Eastern Airlines,[1] to pay $500 a month in child support and $1200 a month in permanent alimony. When the final judgment was entered, the husband was earning $88,000 a year.
In March, 1989, the husband was placed on sick leave. While he was on sick leave, 99% of the members of Eastern's Pilots Association voted to honor the International Association of Machinists and Aerospace Workers' [IAM] picket lines.[2] The husband received strike benefits from his union until he applied for reinstatement with Eastern Airlines. Since he applied for reinstatement, he has not been called back to work by Eastern and has received no income. Although the husband sent sixty copies of his resume to national, regional, and corporate airlines, he received only one offer of employment, from Aloha Airlines in Hawaii,[3] at a substantial reduction in salary.
In June, 1989, the husband petitioned for a modification of his alimony obligations. He alleged a substantial change in circumstances, namely his loss of all income.
At the hearing on his petition, the husband testified that when he voted to honor the Machinists' picket line, he believed that the strike would be short-lived and would only last "a week or so." The husband worked out of Logan International Airport in Boston, and testified that Eastern employees who did not honor the strike were constantly under guard, had their cars vandalized, and were harassed by picketers outside their homes. The husband further testified that he had seen the way nonstrikers were treated, and did not want to suffer the same treatment. Once the husband realized that the strike was going to be lengthy, he applied for reinstatement with Eastern, even though the strike continued.
The trial court dismissed the husband's petition, finding that "the Former Husband's participation in a strike at Eastern Airlines was a voluntary act which was legally insufficient to form the basis of a Petition for Modification of Alimony." We reverse.
The law is well settled in Florida that when a spouse who is obligated to pay support voluntarily reduces his income, the income that he is capable of earning will be imputed to him when determining his support obligations. Ward v. Ward, 502 So.2d 477 (Fla. 3d DCA 1987); Bielecki v. Bielecki, 505 So.2d 546 (Fla. 3d DCA), rev. dismissed, 511 So.2d 297 (Fla. 1987); Maddux v. Maddux, 495 So.2d 863 (Fla. 4th DCA 1986). However, this principle of law has only been applied in cases where the obligated spouse was either pursuing his own interests or had made no attempts to *816 regain the level of earnings he had previously enjoyed. See, e.g., Ward, 502 So.2d 477 (husband retired to spend more time hunting, fishing, and puttering in his yard); Bielecki, 505 So.2d 546 (husband not using best efforts to gain employment equal to his capabilities); Maddux, 495 So.2d 863 (husband voluntarily lowered salary by $300 a week because of business difficulties). Compare, Arce v. Arce, 566 So.2d 1308 (Fla. 3d DCA 1990) (husband who suffered temporary reduction in income to complete education did not voluntarily reduce income, where he had demonstrated his good faith, and his actions were reasonably calculated to ensure future economic well-being of family). In this case, although the husband chose to honor the Machinists' strike, the record shows that he feared that if he crossed the picket line he would endanger his safety and well-being. To hold that an obligated spouse must put life and limb in danger, and refrain from exercising a right protected by both federal and state law[4] is both unjust and unreasonable.
The first district has held that an obligated spouse who participated in an illegal strike by air traffic controllers voluntarily reduced his income. Scapin v. Scapin, 547 So.2d 1012 (Fla. 1st DCA 1989). In Scapin, the court held that because the husband had voluntarily reduced his income, the trial court properly imputed to him income that he was capable of earning, but was presently not earning. Scapin, however, is readily distinguishable from this case on the facts. The Eastern Airlines pilots' sympathy strike was a legal strike, see Eastern Air Lines v. Air Line Pilots Ass'n, Int'l, 710 F. Supp. 1342 (S.D.Fla. 1989); the air traffic controllers' strike that formed the basis of the court's opinion in Scapin was not a legal strike. The legality of the strike bears on the good faith of the obligated spouse and the exercise of rights protected by law. See, e.g., Sandra L. v. John L., 125 Misc.2d 858, 480 N.Y.S.2d 291 (Fam.Ct. 1984) (husband's participation in lawful strike could form the basis for reduction in support payments, as exercise of federally protected right to join a union and engage in concerted activities for collective bargaining purposes protected under 29 U.S.C. § 163). Moreover, in Scapin, the husband "had not reapplied for any suitable government positions commensurate with his abilities ..." and had "voluntarily resigned himself to underemployment in his lawn care business... ." 547 So.2d at 1013. In this case the record shows that the husband has been diligent, albeit unsuccessful, in seeking reemployment as a pilot. His attempts to return to work at Eastern, even though the strike was still in force and he would lose his strike benefits, evidence the scope and good faith of his efforts.
For these reasons, we hold that participation in a legal strike, accompanied by diligent efforts to seek reemployment, cannot be considered a voluntary reduction of income and may form the basis for a petition for modification of alimony payments.
We further hold that the discovery violations alluded to in the order on appeal were not sufficiently egregious to justify dismissal of the petition. See Mercer v. Raine, 443 So.2d 944, 946 (Fla. 1983) (striking of pleadings for failure to comply with discovery order "most severe of all sanctions which should be employed only in extreme circumstances... . deliberate and contumacious disregard of court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces callousness.") (citations omitted); Beauchamp v. Collins, 500 So.2d 294 (Fla. 3d DCA 1986) (abuse of discretion to dismiss cause for failure to comply with discovery order where there was no showing of deliberate and contumacious disregard of trial court's authority), rev. denied, 511 So.2d 297 (Fla. 1987). The record shows that the husband complied, in part, with the discovery order. Although his document production may have been incomplete and somewhat disorganized, his response did not evince bad faith or callous disregard of the court's order. The trial court, therefore, abused *817 its discretion in dismissing the husband's petition as a sanction for failure to comply with the discovery order.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The husband had worked for Eastern Airlines for twenty-two years.
[2] The husband was one of the pilots who voted to honor IAM's picket line.
[3] The husband now lives in New Hampshire.
[4] See 29 U.S.C.A. § 163 (West 1978), § 447.03, Fla. Stat. (1989).