**Richmond**

FRED SAMUEL MILES FLOYD

v.

BARBARA ANN FLOYD

No. 1529-92-2

Decided October 19, 1993

Counsel

Matthew N. Ott (Matthew N. Ott, P.C., on brief), for appellant.

No brief or argument for appellee.

Opinion

**ELDER, J.**—Fred Samuel Miles Floyd appeals from the final decree of divorce entered June 30, 1992, which granted Barbara Ann Floyd a monetary award and spousal and child support. On appeal, he contends that the trial court erred (1) in making the monetary award by considering the five-year period of premarital cohabitation in addition to the factors enumerated in Code § 20-107.3; (2) in determining the amount of both spousal and child support by imputing $45,000 in income to him without specifying the basis for the imputed amount and without first determining the presumptive amount of child support; and (3) in refusing to allocate the federal income tax dependency exemption for the parties' minor child to him, the noncustodial parent, given that he was required to pay approximately eighty-seven percent of the presumptive child support amount. In reviewing appellant's assignments of error, we are guided by the principle that decisions concerning equitable distribution and spousal and child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence. *Srinivasan v. Srinivasan*, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990) (equitable distribution); *Young v. Young*, 3 Va. App. 80, 81, 348 S.E.2d 46, 47 (1986) (child support); *Dukelow v. Dukelow*, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986) (spousal support). For the reasons set forth below, we affirm the ruling of the trial court in part and reverse in part.

Husband and wife began living together in October of 1979, had a child on September 10, 1980, and were married on June 15, 1985. They separated for eight months in 1986, but reconciled and lived together until September 1989, when wife left again and filed for divorce. During the cohabitation and marriage, husband worked in the flooring business. Wife originally worked for C & P Telephone but stopped working about ten months after she and husband began living together and just before the couple's daughter was born. From that point on, wife performed secretarial work out of the home seven days a week and also tended to the household chores. During the 1986 separation, wife worked for a department store earning about $3.75 an

hour and an apartment complex earning about $4.00 an hour. At the hearing on June 30, 1992, wife testified that she earned $520 per month through babysitting. She also testified that she had been unable to secure other employment because she had neither a car nor a driver's license and did not currently have the money to obtain either one.

At a hearing on March 25, 1992, the court determined the following to be the marital property subject to equitable distribution: bank account, $89,348.00; home equity, $26,803.00; cash taken by wife upon separation, $6,000.00; 1931 Ford, $6,000.00; and 1985 Buick, $1,500.00.

On June 30, 1992, the court entered the final decree of divorce. It awarded custody of the child to wife and set husband's child support obligation at $517 per month and spousal support at $400. In so doing, it determined husband's annual income to be $45,000, "[b]ased on the depositions of prior years, the statement in testimony and the statement of money taken out of the business." It also awarded husband $72,280 of the marital estate and wife $57,346. In explaining how it arrived at that figure, the court stated that it considered

> all of the statutory factors, including the length of the marriage, and . . . the fact they lived together for five years, and in considering what kind of business it was, what [husband] did, the fact that [wife] participated in the business by answering the phone, having some other participation in the carrying on of the business, I thought that putting all those factors together, the husband sharing in business was still a little more than the wife. . . .

The court apportioned the largest asset, the bank account of $89,348, fifty-five percent to husband and forty-five percent to wife, and divided all other property equally. In so doing, the court took into consideration that wife had taken $6,000 when she left and that husband had possession of everything else.

Also at that hearing, husband requested that he be given the right to claim the child as a dependent on his income tax returns in light of the fact that he was paying 87.8 percent of the child support. The court stated at one point, "[b]ased on the figures that I have imputed and then computed, it would appear he's paying the greater portion, and I would think that he ought to be entitled to the deduction." However, after being informed by the parties that the law entitles the custodial parent to take the deduction, the trial court "decline[d] the invitation"

to reallocate it but said, "it may be one of those matters that needs to be revisited."

## I.

Appellant contends that the trial court erred in making the equitable distribution award because it expressly considered the five-year period during which the parties cohabited prior to their marriage. We hold that a trial court may properly consider the parties' premarital contributions, both monetary and nonmonetary, insofar as those contributions affected the value of the marital property but that cohabitation alone—absent a showing of its impact on marital property values—is not an appropriate consideration.

■ Code § 20-107.3(A) gives the court the authority, "[u]pon decreeing the dissolution of a marriage," to value and apportion marital property and marital debts. The distribution contemplated by the General Assembly is predicated on the philosophy that marriage represents an economic partnership requiring that, upon dissolution, each partner should receive a fair proportion of the property accumulated during the marital partnership, including property which, although titled in one party's name, has appreciated in value due to the efforts of the non-owner spouse. *Roane v. Roane,* 12 Va. App. 989, 994, 407 S.E.2d 698, 701 (1991). Clearly, the statute does not apply if the couple never married. *See* Code § 20-107.3(A); *Kleinfield v. Veruki,* 7 Va. App. 183, 190, 372 S.E.2d 407, 411 (1988) (holding that court has no jurisdiction to fashion equitable distribution if marriage was void *ab initio* based on bigamy, even if parties acted in good faith). But the statute does not specifically address whether the court may consider premarital contributions, with or without cohabitation, if the couple do ultimately marry.[1]

■ We hold that Code § 20-107.3 does not prevent the trial court from considering premarital contributions to the acquisition or maintenance of property later deemed marital property in fashioning an

---

[1] The Code states that, subject to various conditions and exceptions, "all property, real and personal, acquired by either party *before* the marriage" is separate rather than marital property, Code § 20-107.3(A) (emphasis added), and that "[t]he amount of any division . . . shall be determined . . . after consideration of [several] factors," including "[t]he duration of the marriage." Code § 20-107.3(E)(3). It does not, however, specifically refer to any period of premarital cohabitation as it affects the value of marital property.

equitable distribution. In fact, subsections (E)(2) and (6) clearly *require*[2] consideration of "[t]he contributions . . . of each party in the acquisition and care and maintenance of such marital property" and "[h]ow and when specific items of such marital property were acquired." Subsection (10) allows consideration of "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." Therefore, to disregard the parties' contributions to the acquisition and maintenance of the property and how and when they acquired rights and equities in the property—whether pre- or post-marital—is to disregard the mandate of the statute. Nothing in Code § 20-107.3 limits consideration of the various subsection (E) factors to the time frame of the marriage.

In addition, neither party should be either rewarded or penalized simply because they cohabited prior to marriage; only those actions which affected the value of the property should be considered. *See Aster v. Gross,* 7 Va. App. 1, 5-6, 371 S.E.2d 833, 836 (1988) (holding that "fault" in bringing about dissolution of marriage is not relevant to equitable distribution unless it had an economic impact on the value of the marital estate); *see also Marion v. Marion,* 11 Va. App. 659, 664, 401 S.E.2d 432, 436 (1991) (recognizing that trial court may, in fashioning equitable distribution, consider squandering of marital funds during an adulterous relationship). Here, if the premarital efforts of appellant—the title-holding spouse—are to be considered, equity dictates that those of appellee also be considered so that the title-holding spouse does not receive a windfall.[3] In considering the nature of the parties' contributions during the period of cohabitation, the court may properly determine that certain types of contributions are not entitled to the same weight or consideration as would those same contributions had they been made during the marriage. Such matters clearly remain within the trial court's discretion. However, considering

---

[2] The statute states that the enumerated factors "shall" be considered.

[3] Arguably, the "nontitled" spouse would have available to him or her other legal remedies, such as seeking the imposition of an equitable or constructive trust or attempting to recover under a quasi-contract theory. From a practical perspective, however, we think it logical that the legislature intended to allow the court making equitable distribution of the property to consider any premarital transactions in order to avoid inconsistent results which might arise from separate proceedings. *Cf. Anderson v. Anderson,* 9 Va. App. 446, 448, 389 S.E.2d 175, 176 (1990) (discussing purpose behind General Assembly's express authorization to courts to conduct any necessary partition proceedings in conjunction with equitable distribution).

the period of premarital cohabitation without first determining that it had an effect on the value of marital assets would be inappropriate.

■ For the aforementioned reasons, we hold that the above-quoted language from subsections (E)(2), (6) and (10)—especially when viewed in light of the equitable goals of the statute—clearly provides the trial court with the authority to consider premarital contributions to the acquisition or maintenance of property that later becomes marital property. However, we also hold that providing either spouse a credit based solely on the period of cohabitation is inappropriate. Because we cannot determine from the record whether the trial judge conducted the appropriate inquiry, we remand this case for additional findings of fact consistent with this opinion.

## II.

Appellant also contends that the trial court erred in calculating both child and spousal support.

## A.

■ He argues that the trial court improperly calculated his child support obligation both by imputing income to him without making the required factual findings and by doing so prior to calculating the presumptive amount of support under Code §§ 20-108.1 and 108.2. Appellant is correct that, in all proceedings to award child support originating after July 1, 1989, the court must apply the provisions of Code §§ 20-107 and 108. *See, e.g., O'Brien v. Rose,* 14 Va. App. 960, 963, 420 S.E.2d 246, 248 (1992). These sections provide for the calculation of a "presumptive" amount of child support as a percentage of the parents' combined gross monthly incomes. Code § 20-108.2 establishes a rebuttable presumption that this percentage is appropriate under the circumstances. If the trial judge wishes to deviate from the presumptive amount for reasons not accounted for by the statute, Code §§ 20-108.1 and 108.2 require that he make findings of fact to justify the deviation. *O'Brien,* 14 Va. App. at 964, 420 S.E.2d at 248-49. One of the grounds for deviation is voluntary unemployment or underemployment. If the trial judge finds that one of the parties is voluntarily unemployed or underemployed, he or she may impute income to that party after first calculating the presumptive amount of support. Code § 20-108.1(B)(3); *see Barnhill v. Brooks,* 15 Va. App. 696, 701, 427 S.E.2d 209, 212-13 (1993).

Appellant contends that the trial judge erred both by imputing income to him and by doing so prior to calculating the presumptive amount of support, thereby skewing the calculation of his portion of the child support. Our examination of the record reveals, however, that this is a mischaracterization of the proceedings. Although the trial judge made reference to imputing income, the record clearly shows that this was not the sort of imputation, based on voluntary underemployment, to which the statute applies. What the trial judge did was make a finding of fact as to the amount of appellant's gross income. In fact, appellant conceded on oral argument that this Court could hold that the trial court made a factual finding of income rather than imputing it as defined in the Code. He also conceded that the record contains credible evidence to support the stated figure.

We conclude that the record contains evidence from which the trial court could have found sufficient credible evidence that appellant "engaged in a systematic scheme to hide assets, to hide income," as argued by appellee. Appellant admitted that, between September 1 and December 31, 1989 (immediately following the separation), he cashed checks totalling almost $70,000 and received the proceeds in cash. He testified that he put the money "mostly" in his wallet and "just went and spent it." One of those checks was for $40,000. In his deposition of September 10, 1990, however, appellant gave contradictory testimony in which he denied receiving any money between September 1 and December 31, 1989, which he did not deposit in his account. Other exhibits indicate that appellant's claimed income for 1991 was $17,557 (although he carried forward a loss of $11,912 for tax purposes) and his income for January through May of 1992 was a loss of approximately $9,414. In determining appellant's gross income, the court considered appellant's exhibits, tax return and income and expense statement, and reached the conclusion that he was hiding assets:

I acknowledge that the building industry has been in severe shock. . . .

Counterbalanced with that is the testimony there were other funds available and just taken and used, and within limits as Mr. Ott said, as long as there is no deceit as far as the taxing authorities are concerned, it's Mr. Floyd's money to do what he wants to. He can use it for business or pleasure purposes or whatever. It's his money to do that.

> But it indicates there are other sums of money available. The determination is made on the basis that there are other sums, there have been, and that the financial picture presented is not a precisely accurate one. . . .

He also stated on the record that he found it "a bit disturbing to hear the testimony that a check for $40,000 was drawn and cashed and carried around in a wallet and just spent somehow. That just doesn't quite have the ring of general experience." On that basis he made the following finding:

> [F]rom all the evidence, I've estimated the income and made the conclusions of the income that I have imputed *determined* to exist, and based upon that and considering not only the statutory factors but the testimony presented, I make an award as previously mentioned, the net effect is a monthly effect of $917.

(Emphasis added). Although husband asserted in his closing argument that there was no "hard factual financial information" on which to base an imputation of income and that the supposed hiding of assets was a factor the court had already considered in dividing the marital property, he made no objection following the trial court's ruling and does not contend that this money had previously been factored into his income for purposes of determining support or that the court waited too long to do so.

The trial court properly considered the aforementioned evidence in making a finding of fact as to appellant's gross income, the first step required prior to determining the presumptive amount of support under the statute.

### B.

Appellant also contends that the trial court erred in calculating spousal support by imputing income to him in spite of the fact that the record is devoid of evidence concerning his "ability to pay," as required by Code § 20-107.1. He also contends the trial court erred by not imputing income to appellee, who failed to produce any evidence that she was maximizing her earning potential.

As discussed above, the court did not impute income to appellant within the meaning of the Code. Rather, the record shows that the court made a factual finding concerning the amount of appellant's gross income based on the evidence properly before it. We also dis-

agree with appellant's contention that the record contained no evidence of his ability to pay, one of the factors to be considered under Code § 20-107.1. The record shows that the court considered testimony from appellant's accountant concerning appellant's business losses that the court "counterbalanced with . . . the testimony there were other funds available and just taken as used." Based on that evidence, the court found that "the financial picture presented [by appellant and his accountant was] not a precisely accurate one" and that appellant "did have other sums of money available." We conclude that the court's finding concerning appellant's gross income was not plainly wrong or without evidence to support it.

Next, we hold that the trial court did not err in failing to impute income to appellee. Although we agree with appellant's contention that the court must take into consideration the "earning capacity, obligations, needs and financial resources of the parties," Code § 20-107.1(1), the record contains ample evidence from which the trial court could have found that appellee was not voluntarily underemployed. In spite of appellant's claims, appellee testified that she had been unable to locate employment other than her babysitting job, through which she earned $520 per month. She testified that the telephone company, from which she had earned $20,000 a year, was unwilling to rehire her and that she had been unable to locate any other employment because she did not "have experience or . . . transportation." She testified that she did not have a driver's license or a car and lacked the funds to obtain either one. She also testified that she would have to pay part-time child care for her eleven-year-old daughter if she took employment away from the home. We conclude, based on this evidence that the trial court did not abuse its discretion in declining to impute income to appellee.

### III.

Lastly, appellant argues that the trial court erred in refusing to allocate the federal income tax exemption to him, the noncustodial parent, even though it had required him to pay eighty-seven percent of the presumptive child support amount.

Section 152 of the Internal Revenue Code permits the custodial parent, who is entitled by law to take the federal income tax dependency exemption for a minor child, to sign a waiver disclaiming the exemption for a given tax year. *See* 26 U.S.C. § 152(e). Although the Virginia Code does not expressly provide for "transfer" of this exemp-

tion through waiver, entitlement to or reallocation of the exemption is a factor that may justify deviating from the support guidelines under Code § 20-108.1(B)(15). *See Watkinson v. Henley*, 13 Va. App. 151, 160, 409 S.E.2d 470, 475 (1991). This issue was addressed by the recent ruling of a panel of this Court in *Dietz v. Dietz*, 17 Va. App. 203, 207, 436 S.E.2d 463, 466 (1993). Although Code § 20-107.2 provides that

> a court "may make such further decree as it shall deem expedient concerning the custody, visitation and support" of a minor child . . .[,] the divorce statutes do not convey broad equitable powers [on] the trial court. In view of the legislature's express direction concerning the manner in which a trial court is to treat the tax consequence of "claims for dependent children and child care expenses," a trial court is not free to fashion other remedies.

*Id.* (citations omitted). Accordingly, we hold, as we did in *Dietz*, that the trial court did not err in refusing to order wife to execute a waiver of her federal income tax exemption.

For the aforementioned reasons, we affirm the trial court's ruling as to the child and spousal support awards and denial of the request for reallocation of the federal dependency exemption. We vacate and remand the equitable distribution award for a determination of what effect, if any, the trial judge's improper consideration of the period of premarital cohabitation had on that award.

*Affirmed in part,*
*vacated and remanded in part.*

Coleman, J., and Willis, J., concurred.