COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Overton
Argued at Alexandria, Virginia


YOSUF MIR
                                           OPINION BY
v.   Record No. 0099-02-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         OCTOBER 29, 2002
ZARLASHT MIR


             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        R. Terrence Ney, Judge

          James B. Toohey for appellant.

          Rebecca R. Masri (Law Offices of Earl E.
          Shaffer, on brief), for appellee.


     In this domestic appeal, husband contends the trial court

erred in (1) its equitable distribution award, (2) improperly

imputing income to him, (3) the resulting deviation from the

presumptive amount of child support, and (4) the award of

attorney's fees.  We hold that the trial court did not abuse its

discretion in making the equitable distribution award or the

award of attorney's fees.  We further hold that the trial court

erred in determining the amount of income imputed to husband and

the amount of child support awarded.  Thus, we reverse and

remand for an award consistent with this opinion.

                           Background

     "On appeal, we construe the evidence in the light most

favorable to wife, the prevailing party below, granting to her

evidence all reasonable inferences fairly deducible therefrom."
Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257
(1995) (citing McGuire v. McGuire, 10 Va. App. 248, 250, 391
S.E.2d 344, 346 (1990)).  So viewed, the evidence proved that
the parties were married on March 16, 1989 and separated on
January 1, 1999 when the wife and two children left the marital
home.  On May 4, 1999, the trial court entered a pendente lite
order that required husband to pay $313 per month in child
support.  At the time of the pendente lite hearing, husband's
gross income was found to be $1,375 per month and wife's income
was $1,733 per month.  On September 19, 2001 and October 25,
2001, the trial court took evidence ore tenus on the issues of
equitable distribution and child support.

## Equitable Distribution

The parties purchased the marital home, their only asset,
in mid-1990.  Husband made the $51,922.15 down payment for the
purchase of the home from his separate, premarital property.
During the marriage, husband also made numerous "improvements"
to the home to create rental space.  These "improvements"
included making alterations to the basement, enclosing the
garage to make apartments, and constructing a second story loft.
The parties then used these areas for rental purposes and
collected rents totaling approximately $1,500 per month.  This
practice ended in 1997 when an injunction, sought by the Fairfax
County Zoning Administrator, barred further rental of the

-

basement and garage and required additional alterations to the home in order to comply with the local building code.

At trial, the parties stipulated that the home's mortgage balance was $184,735. There were also outstanding liens against the home. The court determined $2,688.95 to be marital debt and $15,730.13 was found to be husband's separate obligation. The trial court appointed an independent appraiser because the parties were unable to agree on the fair market value of the home. The court-appointed appraiser determined the "as is" value of the home to be $312,000. This figure was approximately $50,000 below the prevailing market price because at the time of trial the home was in serious disrepair. Husband had been the only party living in the home for over a year. The appraiser testified that the marital home was "in need of numerous repairs and replacements." Specifically, he found that the "house exhibits neglect and poor workmanship throughout. Updating/maint./replacements [sic] needed throughout including kitchen, baths, floor cover, paint, drywall, AC, deck, . . . . House needs a new roof." Half of the appraiser's reduction in the fair market value was attributable to normal wear and tear, while the other half was due to the poor construction of husband's "improvements" or to "super-improvements" that actually detracted from the value of the home. For example, the appraiser deducted $10,000 from the estimated value of the home because of the conversion of the garage into living space.

-

The trial court gave husband a credit for the amount of his down payment and, after applying the Brandenburg formula, awarded husband a total credit of $85,542.12 against the value of the home as his separate property. Wife argued to the trial court that an even split of the marital share would be inequitable, because it would leave her with only a fraction of the total value of the home. Pursuing this fairness argument, wife sought 100% of the marital share of the equity in the home, arguing that such an award would be the only way to ensure wife received "her fair share of the equity" in the marital home. The trial court awarded wife 95% of the marital share of the equity in the home.

Husband argues that the trial court abused its discretion in making its equitable distribution award. While husband concedes that there was a $50,000 reduction in the value of the home because of his "improvements," he argues that half of that figure was attributable to normal wear and tear and that the "improvements" causing the problems were made early in the marriage, when both parties were benefiting from the rental income. Husband asserts that there is no statutory basis to support the trial court's distribution of the marital estate. We disagree.

"A decision regarding equitable distribution rests within the sound discretion of the trial court and will not be disturbed unless it is plainly wrong or without evidence to

-

support it." Holden v. Holden, 31 Va. App. 24, 26-27, 520 S.E.2d 842, 844 (1999) (citing McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994)). "Unless it appears from the record that the trial judge has not considered or has misapplied one of the statutory mandates, this Court will not reverse on appeal." Id. at 27, 520 S.E.2d at 844 (citing Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989)). "This Court has ruled that when the trial judge fixes a monetary award, he or she need not elaborate on the specific findings; however, the findings must be based upon credible evidence." Traylor v. Traylor, 19 Va. App. 761, 769, 454 S.E.2d 744, 746 (1995) (citing Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988)). Credible evidence supports the trial court's award.

The court-appointed appraiser testified that some of husband's "improvements" actually decreased the value of the home. This evidence allowed the trial court to determine that husband made negative contributions to the marital estate. While the evidence established that all of the "improvements" were completed during the marriage, the statute requires the trial court to consider "[t]he contributions, monetary and non-monetary, of each party in the acquisition and care and maintenance" of the marital property. Code § 20-107.3(E)(2) (emphasis added). There are no time limitations in the statute delineating when the negative contributions must occur. Rather,

-

the test is the impact on the value of the marital estate. "Those contributions which impact on the value of the marital estate have been of particular concern to this Court. A court need not find waste in order to consider negative contributions in fashioning an equitable distribution award." Barker v. Barker, 27 Va. App. 519, 537, 500 S.E.2d 240, 248-49 (1998) (internal citations omitted). Additionally, husband's failure to care for the home when he was the sole occupant and the poorly constructed improvements he made to the home diminished its value. Thus, it cannot be said that there was no evidence to support the trial court's award.

"The distribution anticipated by the General Assembly is predicated upon the philosophy that marriage represents an economic partnership requiring that upon dissolution each partner should receive a fair proportion of the property accumulated during marriage . . . ." Roane v. Roane, 12 Va. App. 989, 994, 407 S.E.2d 698, 701 (1991) (internal citation omitted). "'The function of the [trial court] is to arrive at a fair and equitable monetary award based upon the equities and the rights and interests of each party in the marital property.'" Gottlieb v. Gottlieb, 19 Va. App. 77, 95, 448 S.E.2d 666, 677 (1994) (quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)).

Although husband complains that the trial court awarded him only five percent of the marital share of the equity in the

-

marital home, he actually received 70% of the money available from the sale of the home while wife received approximately 30%.[1] The statute allows the trial court to take into account "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." Code § 20-107.3(E)(10). Had the trial court adopted husband's position, husband would have received nearly 85% of the total equity in the home while wife received approximately 15% of the total. The trial court properly considered that it would be unfair for husband to receive such a disproportionate share of the only marital asset. The trial court properly weighed the statutory factors in arriving at its equitable distribution award. Accordingly, the trial court's equitable distribution award is affirmed.

## Imputation of Income

Husband holds a degree in public administration from the University of Iowa; however, he never worked in this field. Husband drove a taxicab throughout the marriage and often worked 16-hour days. Wife testified that husband's income during the marriage was "more than $2,000 a month" in addition to the rental income, but that she did not know how much more. Wife

---

[1] Pursuant to the trial court's award, husband received $87,493.82. This amount included his separately traced funds and the additional five percent of the marital share. Wife's share was $37,082.23.

-

based this conclusion on husband's ability to meet the mortgage obligation of $1,600 per month plus the family's other expenses.

Husband testified that he earned in the range of $1,000 to $1,200 per month driving the taxicab. Husband also testified that he had acted as an interpreter for the local courts (husband speaks Farsi and Pashto), but that he had to stop because of a hearing problem. At the time of trial, husband had one roommate who paid $400 per month rent. Thus, the income and expense sheet husband submitted to the trial court showed an income of $1,400 per month. Husband also testified that the taxi manifests showed he earned $3,048.45 for the time period of January through August 2001. Husband claimed that this reduced income stemmed from back pain and carpal tunnel syndrome in the left wrist, which prevented him from working longer hours. Viewed in the light most favorable to wife, the maximum amount of income testified to was "more than $2,000 per month" with no indication of how much more. No evidence was presented of other jobs husband held or what jobs were available to him.

The trial court rejected husband's claims that he had health problems that prevented him from working longer hours or doing other jobs. Wife, however, did not ask the trial court to impute income to husband; rather, she asked the court to find that his actual income was $2,500 per month and requested $1,290 per month in child support. Initially, the trial court made the child support award of $1,290 per month, without making any

-

finding of the presumptive guideline support amount or specifically imputing income. At husband's request for reconsideration, the trial court determined the presumptive amount of child support to be $398 and imputed income to husband in the amount of $5,600 per month and set support at $1,100 per month. The trial court made the new child support obligation retroactive to May 1, 2001.

Husband contends that the trial court erred in imputing income to him because the record is devoid of any evidentiary basis for the court's finding that husband could earn $5,600 per month. Wife never requested an imputation of income, no evidence established that he ever made that much money and even if some imputation was appropriate, wife failed in her burden to show available jobs that would allow the amount awarded. We agree with husband.

"Imputation of income is used by a trial court when deciding whether to deviate from the presumptive amount of child support, and any child support award must be based on circumstances existing at the time the award is made." Albert v. Albert, 38 Va. App. 284, 295, 563 S.E.2d 389, 394 (2002) (internal quotations and citations omitted). "The burden is on the party seeking the imputation to prove that the other parent was voluntarily foregoing more gainful employment, either by producing evidence of a higher-paying former job or by showing that more lucrative work was currently available." Niemiec v.

-

Commonwealth, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998). See also Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993) ("Where a parent is voluntarily unemployed or voluntarily underemployed a trial court may impute income based on evidence of recent past earnings.").

Wife failed to produce any evidence on this issue. The only evidence in this case of earnings in excess of $1,400 per month was wife's testimony that husband made "more than $2,000 per month" during the marriage.[2] However, at the pendente lite hearing on May 4, 1999, the trial court found as a fact, and without objection, that husband's monthly gross income was $1,375 per month. More importantly, the record is silent as to what other, more lucrative jobs were available to husband.

Wife's reliance on Floyd v. Floyd, 17 Va. App. 222, 436 S.E.2d 457 (1993), is misplaced. Floyd is inapposite to the facts of this case because Floyd was not an imputation case. "Although the trial judge made reference to imputing income, the record clearly shows that this was not the sort of imputation, based on voluntary underemployment, to which the statute applies. What the trial judge did was make a finding of fact as to the amount of appellant's gross income." Id. at 229, 436 S.E.2d at 461. In the instant case, the trial court made a

---

[2] There is no documentary evidence regarding earnings in this case. No tax returns were submitted to the trial court and the taxi manifests were not moved into evidence, thus we only have the testimony before us.

finding of fact that husband's gross income was $1,400 per month, then, imputed income to husband, on the ground that he was voluntarily underemployed.  While the trial court may have a basis for imputing some income, the manner and amount are inconsistent with the evidence in the record.

"When asked to impute income to a parent, the trial court must consider the parent's earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and children."  Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579 (citing Brooks v. Rogers, 18 Va. App. 585, 592, 445 S.E.2d 725, 729 (1994)).  "The trial court's award must be based upon circumstances in existence at the time of the award and not upon speculation or conjecture."  Id. at 452, 499 S.E.2d at 579.  The trial court stated:

> I'm going to impute income to him based upon
> what I think he could be reasonably earning,
> and I think $1,400 per month falls short of
> what he could be reasonably earning by a
> factor of four, which would yield $5,200 per
> month. . . . I think he can spend his time
> more profitably doing something other than
> driving a taxicab, and I was not persuaded
> that health reasons prevent him from doing
> so.

The court later revised this figure to $5,600 per month, when counsel questioned the math.  There is no evidence in the record that husband ever made a monthly income of $5,600, that he had recently left a job that paid a similar amount, or that jobs

-

were available that would generate that amount of income.  At best the record reflects that husband earned some income in excess of $2,000, but not a "factor of four" beyond $1,400 per month as determined at trial.  For the foregoing reasons, we hold that the trial court erred in its determination of the amount of income imputed to husband and remand for further consideration.

Child Support

Husband also argues that the trial court erred in setting his child support obligation at $1,100 per month because there was no evidentiary basis for imputing income and, thus, it was error to deviate from the support guidelines.  The proper amount of child support must also be recomputed upon remand as it was determined with the erroneous imputation of income as its basis.

"Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence."  Rinaldi v. Dumsick, 32 Va. App. 330, 334, 528 S.E.2d 134, 136 (2000).  There is

> a rebuttable presumption in any judicial or administrative proceeding for child support, including cases involving split custody or shared custody, that the amount of the award which would result from the application of the guidelines set out in § 20-108.2 is the correct amount of child support to be awarded.

-

Code § 20-108.1(B). The presumption may be rebutted by, <u>inter alia</u>, imputing income to a parent who is voluntarily unemployed or underemployed. Code § 20-108.1(B)(3). The trial court's error in imputing the income amount of $5,600 per month to husband also requires a re-computation of the amount of child support. This award is also reversed and remanded to the trial court for further consideration consistent with this opinion.

Attorney's Fees

Finally, husband contends the trial court erred in its award of attorney's fees to wife of $5,500.

"An award of attorney's fees is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." <u>Graves v. Graves</u>, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). "The key to a proper award of counsel fees is reasonableness under all the circumstances." <u>Joynes v. Payne</u>, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001) (citing <u>McGinnis v. McGinnis</u>, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985)). The evidence showed that both parties were relying on the support of their families at the time of trial. However, husband was employed, albeit at a modest income, while wife was not. Under these circumstances, the award of a part of wife's attorney's fees was reasonable.

-

Thus, the trial court did not abuse its discretion in awarding wife attorney's fees.

Affirmed in part,
reversed in part,
and remanded.

Benton, J., concurring, in part, and dissenting, in part.

I dissent from the portion of the opinion styled "Equitable Distribution," and I concur in the balance of the opinion.

"Code § 20-107.3 . . . is based on the notion that marriage is an economic partnership in which the parties, through varying contributions, monetary and non-monetary, to the acquisition, maintenance, and care of property and to the well-being of the family, may accumulate marital wealth." Dietz v. Dietz, 17 Va. App. 203, 210, 436 S.E.2d 463, 467 (1993). Thus, Code § 20-107.3 mandates that the trial judge divide or transfer the parties' accumulated marital wealth through an equitable distribution. See Gamble v. Gamble, 14 Va. App. 558, 570, 421 S.E.2d 635, 642 (1992). "[W]hat has always been contemplated by the Code § 20-107.3 scheme for equitable distribution of the marital wealth of the parties . . . [is] a distribution which will equitably 'compensate a spouse for his or her contribution to the acquisition of property obtained during the marriage.'" Id. at 569, 421 S.E.2d at 642 (citation omitted).

When making equitable distribution of the marital wealth, the trial judge's findings must have some foundation based on the evidence presented. Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986). In this case, however, without any explanation, the trial judge awarded to the wife 95% of the marital share of the equity in the marital residence, the only marital assets the parties owned. The record establishes that

-

the residence was purchased in 1990 using a substantial down payment from the husband's separate property. At the time of the divorce proceeding, the residence was appraised at $312,000. The appraiser obtained that value after determining that a reduction of $50,000 was appropriate because of the condition of the residence. He testified "that half [of that $50,000] could be attributed to just normal wear and tear, the other half to problems with poor installation, workmanship and condition of improvements that were made after the house was built."

The trial judge determined that the marital share of the equity in the residence was $41,722.86. He did not make a finding that the husband made negative contributions to the marital estate. Moreover, the record contains no evidence that the husband, any more than the wife, was the cause of deterioration in value due to normal wear and tear to the residence. Certainly, no rational reason exists to penalize only the husband because the house needed a new roof or other improvements resulting from years of family use.

Likewise, the evidence proved the husband and wife caused the renovations to be made to the residence for the purpose of securing tenants who paid rent to the family. Those rents generated marital assets in the form of income available to the parties during the marriage. To the extent that the renovation workmanship was substandard, no evidence suggests that only the husband should be penalized. The wife testified that "we"

-

caused the renovations to occur.  Indeed, she further testified that her uncle assisted the husband in making some of the renovations.  Simply put, this record fails to support a conclusion that the $50,000 diminution in value that the appraiser attributed to wear and tear and substandard renovations can be considered as a negative monetary contribution attributable to the husband.

For these reasons, I would reverse the equitable distribution order and remand it to the trial judge for reconsideration.  I concur in the majority decision reversing imputation of income and child support provisions.

-