COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder and Kelsey
Argued at Chesapeake, Virginia


GEORGE P. BARRETT, SR.
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0889-07-1                      JUDGE LARRY G. ELDER
                                                    FEBRUARY 26, 2008
HENRIETTA A. GIBBS-BARRETT


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Lawrence D. Diehl (Ann Brakke Campfield; Barnes & Diehl, P.C.,
on briefs), for appellant.

Paul H. Wilson (Wilson & Wilson, P.C., on brief), for appellee.


George P. Barrett Sr. (husband) appeals from an order awarding his former wife,

Henrietta A. Gibbs-Barrett (wife), sole possession and ownership of the marital residence in an

equitable distribution proceeding conducted pursuant to Code § 20-107.3.  On appeal, husband

contends the circuit court erred in failing to classify as his separate property the equity

attributable to his fifteen years of post-separation mortgage payments.  We hold the trial court

did not err in classifying this equity as wife's, based on husband's fully performed agreement to

pay the mortgage in lieu of support, and that the evidence supported the court's award of the

marital portion of the residence to wife.  Thus, we affirm the award.  We deny the parties'

competing requests for attorneys fees.

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I.

## A. EQUITABLE DISTRIBUTION

On appeal, we consider the evidence in the light most favorable to wife, the party who prevailed in the trial court. E.g. Wilson v. Wilson, 12 Va. App. 1251, 1254, 408 S.E.2d 576, 578 (1991). When a court formulates an equitable distribution award, "the court must first classify and value the parties' marital and separate property." Stumbo v. Stumbo, 20 Va. App. 685, 693, 460 S.E.2d 591, 595 (1995); see Code § 20-107.3(A) (noting property may be classified as separate, marital, or "part separate and part marital," referred to as hybrid). When separate and marital interests have been commingled in a single piece of property, if the parties so request and present sufficient evidence to permit a court to do so, the court must trace and value the marital and separate interests and any appreciation thereon. Code § 20-107.3(A)(1), (3); see Bowers v. Bowers, 4 Va. App. 610, 616-18, 359 S.E.2d 546, 550-51 (1987) (holding parties have duty to present sufficient evidence to allow the court to classify and value disputed property). After classifying and valuing the property, the court must divide the marital portion pursuant to the factors in Code § 20-107.3(E).

> "Fashioning an equitable distribution award lies within the sound discretion of the trial judge . . . ." Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987) (quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)).

In the course of an equitable distribution proceeding, a party may seek credit for post-separation mortgage payments on a jointly owned residence in at least two ways. First, he may seek to retrace those payments to separate property in order to claim entitlement to the

portion of the hybrid asset attributable to those payments, including both the dollar amount by which those payments reduced the principal balance of the loan, Code § 20-107.3(A)(3)(d) to (g); see, e.g., Moran v. Moran, 29 Va. App. 408, 413-14, 512 S.E.2d 834, 836 (1999) (explaining that property is acquired "to the extent [payments] reduce the principal of the mortgage"), and the amount of any appreciation in value attributable to that principal reduction, Code § 20-107.3(A)(1) (defining separate property to include "[t]he increase in value of separate property during the marriage" absent proof that increase resulted from significant personal effort of either party); see, e.g., Martin v. Martin, 27 Va. App. 745, 751-53, 501 S.E.2d 450, 453-54 (1998). See generally 2 Brett R. Turner, Equitable Distribution of Property §§ 5:23, 6:86 (3d ed. 2005). Second, under Code § 20-107.3(E)(2), he may request consideration for those mortgage payments as monetary contributions to "the acquisition and care and maintenance of such marital property of the parties" as they pertain to the division of the marital property. See von Raab v. von Raab, 26 Va. App. 239, 249-50, 494 S.E.2d 156, 161 (1997) (noting that dollar-for-dollar credit is not required in this context).

Husband contends that in the Virginia equitable distribution proceedings conducted following the parties' 2004 divorce in Florida, the trial court erred in failing to hold he had acquired a separate property interest in the residence purchased in 1968 via his post-separation reduction in the mortgage principal balance resulting from payments he made from 1972 through 1987. He also claims as his separate property the increase in value of that share. Finally, he avers the bulk of the property interest acquired before the parties' last separation in 1972 was marital and that the trial court should have awarded him an equal interest in this portion. We hold the evidence, viewed in the light most favorable to wife, supports both the trial court's classification of the equity at issue as wife's separate property and its award of the entire residence to wife.

The trial court found wife gave up "the right to seek child and spousal support in [exchange for husband's] payment of the mortgage payments on the marital home" from 1972 to 1987, classified the property as hybrid, and awarded the residence to wife after considering the Code § 20-107.3(E) factors. The fact that the court lacked authority to award wife any portion of husband's separate interest in the residence, see Code § 20-107.3(A)(1), -107.3(C), compels the conclusion that the trial court rejected husband's claim of a separate ownership interest in the property and determined that only wife had a separate ownership interest therein. See Brown v. Commonwealth, 8 Va. App. 126, 133, 380 S.E.2d 8, 12 (1989) (setting out principle that in the absence of an express ruling or other clear evidence to the contrary, an appellate court must presume the trial court properly applied the law to the facts).

We hold the trial court did not err in classifying the mortgage payments husband made from 1972 through 1987 and the corresponding reduction in the principal balance as wife's separate property rather than husband's. Nothing in Virginia jurisprudence prevents a court proceeding under Code § 20-107.3 from classifying, as a recipient spouse's separate property, mortgage payments a payor spouse makes in lieu of support—whether spousal support, child support, or both types of support— where the spouses entered into a verbal agreement to that effect in 1972 and completed it almost entirely prior to the effective date of Virginia's marital agreement statute.[1] See Code § 20-155 (providing marital agreements are valid on same terms as premarital agreements, as set out in Code §§ 20-147 to -154); 1987 Va. Acts, ch. 41 (enacting § 20-155, extending application of Premarital Agreement Act to marital agreements, to take

---

[1] The marital agreement statute, Code § 20-155, by incorporating the Premarital Agreement Act, Code §§ 20-147 to -154, provides that a marital agreement "shall be in writing and signed by both parties" and "shall be enforceable without consideration." Code § 20-149. No writing is required "[i]f the terms [of the agreement] . . . are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally." Code § 20-155.

- 4 -

effect on July 1, 1987); see also Code § 20-147 (providing Premarital Agreement Act applies to "any premarital agreement executed on or after July 1, 1986").

Even assuming Code § 20-155 is applicable here, an agreement or contract regarding the payment of child support is not recognized by Code § 20-155 as one "affecting those 'rights and obligations' that arise from the marital relationship." See Black v. Edwards, 248 Va. 90, 93-94, 445 S.E.2d 107, 109-10 (1994) (evaluating agreement to make reciprocal wills involving disposition of, *inter alia*, couple's marital residence and holding "each spouse's contractual intent to benefit third parties after the death of both spouses did not affect the 'rights and obligations' arising from the [spouses'] marital relationship" such that Code § 20-155 did not apply to agreement); see also Code § 20-150 (detailing subjects for premarital and marital agreements, including spousal support, but not mentioning child support). Although marriage often results in the birth of children, a parent's duty to support his or her children arises from the parent-child relationship, whether or not a marital relationship between the parents ever existed. Further, this equitable distribution action does not involve wife's seeking to enforce husband's promise under the agreement to make the mortgage payments, and husband is not asserting the fact that he made those payments as a defense to an action by wife for support. Instead, in the instant action, the fact that such an agreement existed pertains only to the court's classification of husband's mortgage payments for purposes of equitable distribution.

Further, other states have held that a court does not abuse its discretion in holding that a spouse ordered to make post-separation mortgage payments from his separate funds in lieu of paying support may not receive as his separate property the proportional ownership interest in the house gained as a result of those payments. See Dodson v. Dodson, 955 P.2d 902, 912-13 (Alaska 1998) (holding court did not abuse discretion in refusing to credit the husband for payments made to the wife because "the payments can best be characterized as an award of

spousal support to [the wife]"); Honeycutt v. Honeycutt, 669 So. 2d 1098, 1098 (Fla. Dist. Ct. App. 1996) (holding the husband was "not entitled to a credit for mortgage payments he made during the pendency of the case since those payments were made pursuant to court order in lieu of temporary child support"); Squires v. Squires, 631 S.E.2d 156, 161 (N.C. App. 2006) (holding provision of "alimony" order requiring the husband "to pay the monthly service" on the marital home until the property was sold did not "conflict" with court's refusal "to credit him with any principal reduction" where the husband "failed to present any evidence of principal reduction and where the payments [were] ordered as part of [the husband's] support of his dependent spouse"). Whether or not a support order exists, a court, in its discretion, may conclude those payments are the property of the recipient spouse and credit them as the recipient's separate property in determining the ownership of the various interests in the marital residence for purposes of equitable distribution. See Turner, supra, § 6:86, at 454 ("Because the purpose of the payment is to meet a nonmarital expense of the recipient, the payments should be treated as the recipient's separate property. This should be true even though the payments come from the payor's separate income, for the entire purpose of the obligation is to take value away from the payor and give it to the payee.").

Contrary to husband's contention, such a holding on the facts of this case does not run afoul of the principles set out in Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994), a decision rendered after the parties' children had reached majority. Kelley held that "parents cannot contract away their children's rights to support" and a court cannot "be precluded by agreement from exercising its power to decree child support." Id. As we have made clear, however, "parents may and, indeed, are encouraged under Virginia public policy, to reach agreement respecting the care and support of their minor children." Shoup v. Shoup, 37 Va. App. 240, 248, 556 S.E.2d 783, 787 (2001) (en banc). As we explained subsequent to the

- 6 -

decision in Kelley, "the parties in a divorce can reach an agreement on child support without violating the principles in Kelley" as long as certain requirements are met. Lehman v. Lehman, 38 Va. App. 598, 605-06, 567 S.E.2d 571, 575 (2002). The "three limitations upon the parties' right to contract regarding child support" are as follows:

> [First,] [w]here an agreement has been reached and either party requests incorporation [as a term of a final decree or other court order], . . . the court must review the provisions of the agreement for their consistency with the best interests of the child or children whose welfare the agreement addresses. Second, the parties may not, by agreement, prevent the court from exercising its power to change, modify, or enforce its decree concerning the custody and maintenance of minor children. The third limitation, emanating from the first two, prohibits the parties from terminating by contract a parent's duty to support a child.

Shoup, 37 Va. App. at 250, 556 S.E.2d at 788 (citations and footnote omitted).

None of those limitations were violated in this case. Viewing the evidence in the light most favorable to wife's claim regarding the existence of such an agreement, as the trial court clearly did, the agreement merely permitted husband to support his children by making support payments directly to the mortgage company, and the agreement was fully executed before any court was asked to pass on its validity. It is undisputed that no court was "precluded" from exercising its right to decree child support based on the existence of the agreement because wife voluntarily withdrew her judicial request for support in 1972, the children were never thereafter alleged to be in necessitous circumstances, and the children reached the age of majority long before husband attempted to challenge the validity of the agreement in the present proceeding.

Thus, we hold the court did not err in classifying the post-separation reduction in mortgage principal and the earnings thereon as wife's separate property.

The record also supports the court's decision to award wife all of the relatively small percentage of the property that was marital, which consisted of the equity acquired with the

marital share of the down payment (approximately 12% of the total purchase price of the home[2])

and the principal balance reduction that occurred as a result of the mortgage payments made

between the purchase of the house in November 1968 and the parties' final separation in 1972

(approximately 6% of the total purchase price of the home[3]). Code § 20-107.3(E) required the

court to consider, *inter alia*, "[t]he contributions, monetary and nonmonetary, of each party to the

well-being of the family . . . [and] in the acquisition and care and maintenance of . . . marital

property of the parties," "the ages and physical and mental condition of the parties," "[h]ow and

when specific items of such marital property were acquired," and "[t]he liquid or nonliquid

character of all marital property." Subsection (E)(11) permitted the court, in its discretion, to

consider "[s]uch other factors as the court deems necessary or appropriate . . . in order to arrive

at a fair and equitable monetary award."

The evidence showed the parties acquired the property when husband, who had left wife

and the children on more than one occasion during the marriage, proposed a reconciliation and

asked the family to move from Philadelphia, where they had previously resided, to Virginia,

where husband had relocated. Wife used a combination of separate and marital funds,

withdrawn from her civil service retirement, so that they could make a down payment on the

---

[2] The parties made a down payment of approximately $3,090 and assumed a loan with a remaining principal balance of $16,250, for a total purchase price of $19,340. Husband's evidence established that the down payment was more than nine-twelfths marital, because the parties were married for the last nine of the twelve years during which wife accrued the retirement benefits she cashed in to make the down payment and husband's evidence established wife accrued a greater but unquantified benefit each year as her salary increased and she advanced in seniority. Thus, the marital share of the down payment established by husband's evidence was (9/12)($3,090)/$19,340, or approximately 12% of the purchase price.

[3] Husband's amortization evidence permitted a finding that the bulk of each house payment from 1968 until the parties' final separation in 1972 went to pay interest rather than principal and that the total principal reduction during this time period was approximately $1,100. Thus, between 1968 and 1972, the parties acquired less than an additional 6% marital interest in the home.

residence at issue, but after they purchased the house jointly, husband resided with the family for less than three months before again leaving wife, the children, and the house. Three years later, he reconciled with her again, but they resided in the house as husband and wife for only two more months before separating permanently. Thereafter, wife raised the two children, while husband resided out-of-state and visited only occasionally. Wife, who was employed outside the home, continued to reside in the house, maintain it, and make improvements on it over the course of the next twenty-three years until the mortgage was paid off in 1995, and she resided in it, maintained it, and paid the taxes on it for an additional approximately ten years until these equitable distribution proceedings were begun.

From 1972 to 1987, husband made mortgage payments for the residence, but the trial court found he agreed to make those payments in lieu of support and that the payments were wife's separate property, a finding supported by the evidence and not in contravention of applicable law, as discussed above. When the children reached the age of majority, husband notified wife that he was terminating those payments on what he referred to in writing as "Your own House note[]." Wife testified that she knew the property was titled jointly to her and husband but that she did not know he intended to assert any interest in it while she was alive and that if she had been aware of this, she would not have made any of the repairs or improvements she did over the years. Also, at the time of the equitable distribution proceedings, she was in her 70s and averred she lacked the financial resources to purchase a comparable house, which she said she could have done if husband had informed her earlier of his intent to claim an interest in the home rather than treating it as if it were hers.

The trial court found that wife "has lived at the subject property with the understanding that the property was hers" and that husband's "course of conduct suggested that he was compliant with [wife's] full 'ownership' of the subject property." The court expressly

- 9 -

considered this course of conduct under Code § 20-107.3(E)(11), which allows a court effecting an equitable distribution to consider "[s]uch other factors as the court deems necessary or appropriate . . . in order to arrive at a fair and equitable monetary award." See also Code § 20-107.3(E)(2); Mir v. Mir, 39 Va. App. 119, 125-26, 571 S.E.2d 299, 302 (2002) (holding court can consider party's "negative contributions" to care and maintenance of marital property).

This evidence supported the trial court's award of the 18% of marital equity and appreciation thereon to wife.

## B. ATTORNEYS' FEES AND COSTS

The parties have made competing requests for attorney's fees and costs incurred on appeal. We decline those requests. We decline the request of husband, who has not prevailed, because he has not established any basis on which wife should be required to pay his attorney's fees and costs. Although wife has prevailed, the record contains no indication that husband "generated unnecessary delay or expense in pursuit of his interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). This appeal addressed "appropriate and substantial issues" in a case in which the proper application of the law to the facts was subject to reasonable dispute. Id.

## III.

For these reasons, we hold the trial court did not err in classifying the disputed portion of the equity in the marital residence as wife's, based on husband's fully performed agreement to pay the mortgage in lieu of support. We also hold the evidence supported the court's award of the marital portion of the residence to wife. Thus, we affirm the award. We deny the parties' competing requests for attorney's fees.

Affirmed.