COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, AtLee and Malveaux
Argued at Fredericksburg, Virginia

WARREN D. BLATZ, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 0999-19-4          JUDGE GLEN A. HUFF
DECEMBER 10, 2019

CYNTHIA A. BLATZ

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Susan L. Whitlock, Judge

Monica J. Chernin (Law Offices of Monica J. Chernin, PC, on
brief), for appellant.

Elizabeth G. Thorne (Davies, Barrell, Will, Lewellyn & Edwards,
PLC, on brief), for appellee.

Warren D. Blatz, Jr. ("husband") appeals the divorce decree issued by the Circuit Court

of Culpeper County. In four assignments of error, he claims that the trial court erred by

assigning him one hundred percent of the marital debt, awarding wife "over eighty-five percent

of" the marital property, evenly dividing the marital portion of the parties' retirement accounts,

and ordering him to bear the costs of preparing the Qualified Domestic Relations Order

("QDRO") for dividing the retirement account funds that he had transferred during the pendency

of the suit.

The trial court properly considered the statutory factors in dividing the parties' assets and

debts, and this Court affirms. The trial court did not abuse its discretion by deciding that fairness

required that wife not be burdened by a debt arranged without her knowledge. Further, the trial

court considered the statutory factors and properly concluded the remainder of the equitable

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

distribution was fair. Moreover, the trial court was justified in requiring husband bear the cost of preparing the QDRO for his account. He was better able than wife to bear the responsibility when he possessed the information necessary to draft the QDRO.

## I. BACKGROUND

"On appeal, we construe the evidence in the light most favorable to wife, the prevailing party below, granting to her evidence all reasonable inferences fairly deducible therefrom." Mir v. Mir, 39 Va. App. 119, 123 (2002) (quoting Donnell v. Donnell, 20 Va. App. 37, 39 (1995)). So viewed the evidence is as follows:

Husband and wife were married in 1997. Husband is twenty-nine years older than wife. The parties did not have any children together, although both parties had children from prior relationships.

Husband had inherited several million dollars from his mother before the marriage. He purchased the parties' marital residence immediately before the parties' wedding using some of those separate funds. He continues to own that home, worth approximately half a million dollars, free of any liens.

Husband handled the parties' finances. Both parties worked full time throughout the marriage except a few years early in the marriage when wife completed a nursing degree and the last few years before the trial when husband was retired. Both parties' salaries were deposited in a joint checking account from which husband paid their bills. While the parties' extravagant lifestyle frequently caused their expenditures to exceed their income, husband made up the difference from his investment accounts that contained his inheritance from his mother and another inheritance from an aunt that passed away while the parties were married. Wife attempted to discuss finances with husband on multiple occasions, but husband refused. He

never suggested that the parties needed a budget or that they needed to cut back on their spending.

Although husband occasionally made dinner, wife performed the majority of household chores. Husband spent most of his time after work in the basement den. He frequently drank to excess.

The parties separated in 2017. At first, wife remained in the upstairs bedroom and requested husband sleep in the basement. Later in the year, wife obtained her own home and moved out. She took with her the furniture from the rooms she used more and thought the value of what she took was similar to what she left behind. Husband did not object to the division of the furniture she made. The trial court awarded each party the furniture in his or her possession.

Wife also took most of the jewelry she had been given throughout the marriage. Other than jewelry that had originally come from husband's mother, husband did not object to wife keeping the jewelry, and the trial court awarded wife all of the jewelry except the pieces husband had requested. The total value of the jewelry was approximately $65,000.

The trial court also awarded each party the vehicle he or she customarily drove. Wife received her 2011 Lexus, worth approximately $20,000, and husband received his 2010 Ford Fusion, worth approximately $5400. The trial court also awarded husband the parties' joint checking account with $4400 in it and his cigar, gun, pocketknife, and straight razor collections worth approximately $4000.

The parties had several retirement accounts. Wife had a single defined contribution account worth approximately $65,000. Husband had a Virginia Retirement System pension that was in pay status—because husband had already retired—that was paying $3200 per month. He also had two defined contribution plans worth approximately $120,000. While the case was pending, husband transferred the funds from his defined contribution plans to his investment

accounts.  The trial court awarded both parties fifty percent of the marital share of each of the parties' retirement accounts and husband's pension.  At wife's request, the trial court ordered husband to bear the cost of preparing the QDRO for distributing wife's portion of the funds he transferred to his investment account.

The biggest dispute was the parties' debt.  In 2008, without telling wife, husband stopped paying for the excess spending with his separate funds.  Instead he covered excess bills with proceeds of a home equity loan and other loans secured by his investment accounts.  Husband testified that he adopted that strategy based on recommendations from his financial advisors who suggested that growth of his investment portfolio could outpace the cost of using borrowed funds to pay bills.  He testified that the loans had been as high as $500,000, but that he had been paying them off.  The trial court found the $280,000 balance of the loans to be marital debt.[1]  It found, however, "that the debt incurred by [husband] was an investment strategy.  He happily spent his inheritance without complaint throughout the marriage yet now wants an award because he is disgruntled over the parties' crumbled marriage.  Thus, he shall bear his own debt."  It assigned him the responsibility for the entire debt.

The trial court then granted the divorce based on the parties living separate and apart for more than a year.  This appeal followed.

## II.  STANDARD OF REVIEW

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it."  Srinivasan v. Srinivasan, 10 Va. App. 728, 732 (1990).  "Only under exceptional

---

[1] At trial wife argued the debt was husband's separate debt, but does not assign cross-error to the trial court's finding that the debt was marital.

circumstances will we interfere with the exercise of the trial judge's discretion." Aster v. Gross, 7 Va. App. 1, 8 (1988).

## III. ANALYSIS

Husband challenges the trial court's equitable distribution award. He argues the trial court erred because he is saddled with all the parties' debts but was only awarded a tiny fraction of the parties' assets.

Code § 20-107.3(E) requires a trial court to consider eleven factors when apportioning marital assets and debts. "A trial court, when considering these factors, is not required to quantify the weight given to each, nor is it required to weigh each factor equally, though its considerations must be supported by the evidence." Marion v. Marion, 11 Va. App. 659, 664 (1991). "Because making an equitable distribution award is often a difficult task, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" Howell v. Howell, 31 Va. App. 332, 350 (2000) (quoting Moran v. Moran, 29 Va. App. 408, 417 (1999)). "Virginia equitable distribution law 'does not establish a presumption of equal distribution of marital assets.'" Sfreddo v. Sfreddo, 59 Va. App. 471, 486 (2012) (quoting Watts v. Watts, 40 Va. App. 685, 702 (2003)). "The function of the [trial court] is to arrive at a fair and equitable monetary award based upon the equities and the rights and interests of each party in the marital property." Mir, 39 Va. App. at 126 (quoting Gottlieb v. Gottlieb, 19 Va. App. 77, 95 (1994)).

Although husband challenges the trial court's award to wife of fifty percent of his retirement accounts and the award of personal properties, his primary complaint is the trial court's decision to assign him the entire outstanding $280,000 balance of the loan he took out against his investment account. He claims that he is being punished for his fault in bringing about the dissolution of the marriage.

The trial court concluded that the parties had established a pattern of living beyond their means with husband drawing on his separate funds to make up the difference. If that had been the end of the analysis, it might favor husband's argument. See Srinivasan, 10 Va. App. at 733 ("[W]here one party contributes substantially more to a marriage financially, the court may in its discretion, in weighing and balancing all of the factors in Code § 20-107.3, give appropriate weight to that factor and make a greater award to the party contributing the most financially."). Husband chose, however, to unilaterally take out loans to support the parties' lifestyle without telling wife, despite her repeated requests for information about their financial situation. The trial court found, with sufficient support in the record, that he did so "as an investment strategy." In other words, husband sought to maximize return on his investments by borrowing instead of continuing to spend the principal of his portfolio.

In light of the parties' established financial arrangements, the trial court permissibly concluded that wife should not be assigned a debt that was unknown to her and was solely the product of husband's strategy for maximizing his investment returns. That decision is supported by this Court's precedent. In Howell, the parties established a pattern of borrowing significant sums of money each year until the husband's employment made its annual distribution of the husband's partnership earnings. This Court held that the trial court did not err when it required the husband to pay the entire balance on the loan of over $120,000 because it was consistent with the expectations for managing the parties' finances that the parties had established during the marriage. Howell, 31 Va. App. at 350 ("The allocation of the debt to the husband is proper given the manner in which this couple managed their finances. To prevent an inequity, the trial court properly ordered the husband to pay the debt, and it considered all the statutory factors of Code § 20-107.3. We find no abuse of discretion.").

In the instant case, the parties established a pattern of living beyond their means supported by husband's separate investment account. Husband handled the parties' finances and refused to discuss their finances with wife. The trial court did not abuse its discretion by assigning the debt to husband. Code § 20-107.3(E)(11) ("[The trial court may consider s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award."). Thus, this Court affirms the trial court's assignment of the marital debt to husband.

Next, husband argues that the trial court erred in awarding most of the parties' tangible personal property to wife. He argues the trial court had no reason other than a desire to punish him for the dissolution of the marriage to award wife more of the personal property. But he does not identify any specific property that the trial court should have awarded differently. More importantly, in the trial court, husband acquiesced to the distribution of property he now challenges. He conceded the cars, jewelry, and household furnishings should be awarded exactly how the trial court awarded them. Thus, he has waived any challenge to this distribution of the property. Asgari v. Asgari, 33 Va. App. 393, 403 (2000) ("Husband will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with his representations.").

Next, husband claims the trial court erred in dividing the parties' retirement accounts equally. He concedes that normally an equal division of the retirement accounts would be appropriate, but he claims that because he was saddled with the parties' debt and the parties' tangible personal property was divided unequally, the trial court should not have evenly divided the parties' retirement funds.

Here, the trial court found that special circumstances justified awarding all the debt to husband. As already explained, this Court affirms that finding. When the remainder of the trial

court's division of property is considered, it is not so uneven as to conclude the trial court abused its discretion. "Code § 20-107.3 contains no presumption favoring equal division of marital property." Aster, 7 Va. App. at 8. Although the trial court awarded wife significantly more tangible personal property, specifically most of the jewelry, the parties' retirement accounts were the parties' largest assets. When considered together, the trial court's award to wife was only a modest amount larger than the award of assets to husband. Moreover, although both parties contributed financially to the marriage, the trial court found that wife contributed more non-economic support to the marriage. In light of that finding, the trial court's decision to award wife more of the assets and equally divide the retirement accounts was not an abuse of discretion. McIlwain v. McIlwain, 52 Va. App. 644, 650-51 (2008) ("When a trial court has considered the statutory factors, this Court will not reverse that court's ruling unless the record indicates that the trial court abused its discretion.").

Finally, husband claims the trial court erred by requiring him to bear the costs of preparing the QDRO required to effectuate the trial court's distribution of the retirement accounts. However, the trial court had justification for its decision. Here, husband transferred his retirement funds while the case was pending. Husband had the account information necessary to prepare the order and wife did not. The trial court did not abuse its discretion when it concluded that it was fair to require husband to bear the costs of preparing the QDRO since he held the information needed.

## IV. CONCLUSION

Although the trial court found the loan taken out by husband without wife's knowledge to be marital debt, it was not required to apportion any of that debt to wife. Under the unique facts of this case, the trial court did not abuse its discretion in finding that the loan was part of husband's investment strategy and that he should be required to bear that obligation. Further, the

trial court did not abuse its discretion in awarding wife more tangible property when it made awards that were consistent with the parties' requests and when it split the parties' retirement accounts equally. Finally, the trial court did not abuse its discretion in requiring appellant to bear the burden of drafting the QDRO to effect the division of the funds which he had transferred from his retirement account to his investment account while the case was pending. He possessed the information necessary for drafting the QDRO, and the trial court reasonably found he should bear the cost of preparing it.

Affirmed.