DONNA L. COHN, a/k/a Donna L. Sumner, Petitioner-Appellee, *v.* STEWART A. COHN, Respondent-Appellant.

Second District   No. 83—430

Opinion filed March 22, 1984.

Philip C. Ruddy and John S. Noble, both of Ruddy, Myler, Ruddy & Fabian, of Aurora, for appellant.

Fred M. Morelli, Jr., of Aurora, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Respondent, Stewart A. Cohn, appeals from the denial of his petition for reduction of child support, filed pursuant to section 510(a) of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1981, ch. 40, par. 510(a).) The basis of the petition was reduction in income due to the loss of respondent's job as an air traffic controller. No brief has been filed by the petitioner-appellee. We therefore review this case in accordance with the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Respondent and petitioner were married in 1964 and divorced in 1976. At the time of the divorce, petitioner was given custody of the couple's three minor children and respondent was ordered to pay $500 per month in child support. Respondent was at that time an air traffic controller for the Federal Aviation Administration (FAA). Both parties subsequently remarried.

In 1981, respondent's child support payments were increased by

court order to $750 per month ($250 per child). At that time, respondent was still employed as an air traffic controller and was earning $40,000 per year. Later, by agreement of the parties, custody of one of the children was transferred to respondent and by court order the child support was reduced to $500 per month.

Respondent commenced employment with the FAA in 1965 and obtained the status of air traffic controller in 1968. In 1968, he joined PATCO, the union representing controllers, as a rank and file member. Respondent testified that about 85% of all traffic controllers belonged to PATCO. Prior to his employment with the FAA, respondent served four years in the military. He has no other substantial work experience, job skills or educational background.

At the hearing on his petition for reduction, respondent testified that between 1970 and 1980, he participated in a "sick out" and two to three work slow-downs which had been organized by PATCO in an effort to improve working conditions for the membership. The "sick out" involved air traffic controllers calling in sick and refusing to report for work. Each of these activities was successful in that working conditions and/or wages for the membership were improved.

During the summer of 1981, the FAA and PATCO began negotiations on a new contract. PATCO recommended a strike and called a meeting to take a strike vote. Being "unsure of things and scared of the situation," respondent went to Canada to avoid the strike-vote meeting. The result of the vote was that an insufficient number of members voted to strike.

When respondent returned to work after the strike vote, he testified that three-quarters of the people would not talk to him nor would he get relieved on occasion. Respondent attributed this mistreatment by his fellow employees to his failure to attend the strike-vote meeting.

A second strike vote was held on August 2, 1981, and this time a sufficient number of votes to call a strike was obtained. Between the first and second strike votes respondent testified that he attended several PATCO meetings. After respondent learned that the requisite number of union members had voted for a strike and that the strike would indeed take place, he decided to go along with the majority. Respondent testified that he was motivated in this decision by his desire to improve his working conditions and increase his salary and, to some extent, by peer pressure.

Respondent was aware that the President of the United States had ordered the controllers to return to work and that he could possibly lose his job for failing to do so. However, based upon his past ex-

perience respondent did not believe this would occur. Subsequently, on August 13, 1981, he received a letter from the FAA notifying him that his employment was being terminated, subject to his right to file an appeal. A second letter was then received advising respondent that in fact his employment was terminated effective August 31, 1981.

Respondent testified that he made two attempts to return to work, once before the final termination letter and once after, but was unsuccessful both times. Subsequently, he appealed his termination but at the time of the hearing in the instant case no decision had yet been made.

After losing his job with the FAA, respondent sought other employment. He was able to find a job as a truck driver earning $181.11 per week ($778.77 per month) net at the time of the hearing in this case. His monthly expenses not including rent and child support were $759.20.

After the hearing, respondent's petition for reduction in child-support payments was denied, the trial court finding that respondent's termination of employment with the FAA was the result of a voluntary act by respondent done in conscious disregard for the rights of his children. Respondent therefore remains obligated to pay $500 per month in child support.

Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act provides that the provisions of any judgment respecting maintenance or support may be modified only upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1981, ch. 40, par. 510(a).) Considerable discretion is placed in the trial court in support modification proceedings and generally the court's order will not be disturbed on review unless an abuse of discretion is shown. (*In re Marriage of Butler* (1982), 106 Ill. App. 3d 831, 837, 436 N.E.2d 561; *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 683, 426 N.E.2d 246.) The courts have considered economic reversals resulting from employment or investments as proper areas of inquiry when determining whether child support should be reduced (*Weinert v. Weinert* (1982), 105 Ill. App. 3d 56, 58, 433 N.E.2d 1158; *Elizer v. Elizer* (1976), 36 Ill. App. 3d 552, 344 N.E.2d 493) with reservation, however, that such circumstances must be fortuitous and not the result of deliberate conduct on the part of the petitioning party (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785; *Shellene v. Shellene* (1977), 52 Ill. App. 3d 889, 890-91, 368 N.E.2d 153). In cases where the change in circumstances was deliberately brought about by the party seeking reduction, courts have not hesitated to refuse granting such reductions. Nevertheless it is also well established that a voluntary change in em-

ployment made in good faith and not prompted by a desire to evade responsibility may constitute a substantial change in circumstances warranting modification of a child support order. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785; *In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 46-47, 400 N.E.2d 995; *In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 147, 398 N.E.2d 1243.) Finally, in *Shellene v. Shellene* (1977), 52 Ill. App. 3d 889, 891-92, 368 N.E.2d 153, dealing with a reduction in alimony, we noted that previous decisions can serve only as general guides since every set of circumstances is different and a given set of circumstances may change in time. (See also *Barrow v. Barrow* (1975), 33 Ill. App. 3d 654, 656, 342 N.E.2d 237.) We believe this applies with equal force to cases dealing with reductions in child support.

The trial judge here acknowledged that the circumstances of this case are especially unique in that participation in a strike and an alleged violation of a presidential order are involved. Given these circumstances, the court ruled that defendant's termination of employment was voluntary because of his knowing participation in a strike with job loss as the foreseeable result of his action. The court further adopted a concept of "good faith" which included an obligation on a payor to avoid acting in conscious disregard of the rights of his or her children so as to jeopardize their interests. It therefore concluded that there was no showing of good faith here.

We think the trial court's definition of "good faith" is too broad. In *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785, we stated that "[t]he crucial consideration in testing 'good faith' is whether the change in status was prompted by a desire to evade financial responsibility for supporting the children or to otherwise jeopardize their interests." This requires an inquiry as to motive rather than results. We find no evidence in this record to support the conclusion that respondent's participation in the strike was motivated by a desire to jeopardize his children's interests or to evade financial responsibility for their support. To the contrary, respondent testified that his goal in participating in the strike was to increase his salary, better his working conditions and improve his standard of living, the same goals that prompted successful union action in the past. Based on past experience the respondent testified that he did not feel he would be permanently discharged, even though he was aware of the presidential order. We also note that respondent's participation in the strike was merely of a rank-and-file nature as opposed to one of leadership. We also are cognizant of the peer pressure to which he was subjected. Under these circumstances, we conclude that

respondent participated in the strike in "good faith" and was therefore entitled to a reduction in child support reflective of his present ability to pay. Upon remand, the trial court in its discretion will determine the effective date of the modification order. *Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089, 1108-09, 425 N.E.2d 1251; *In re Marriage of Junge* (1979), 73 Ill. App. 3d 767, 771, 392 N.E.2d 313.

The order of the circuit court of Kane County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

LINDBERG and VAN DEUSEN, JJ., concur.