COURT OF APPEALS OF VIRGINIA

Present:  Judges Koontz*, Elder and Fitzpatrick
Argued at Salem, Virginia

CORA D. RAWLINGS

v.     Record No. 2026-94-3                    OPINION BY
                                        JUDGE LAWRENCE L. KOONTZ, JR.
PHILIP W. RAWLINGS                         AUGUST 22, 1995

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
J. Michael Gamble, Judge

George W. Nolley for appellant.

Philip B. Baker (Peter Mitchell, on brief), for appellee.


Cora D. Rawlings appeals a decision of the circuit court reducing the child support obligation of her former husband, Philip W. Rawlings, during the pendency of his participation in a legal union strike against his employer.  Mrs. Rawlings asserts that Mr. Rawlings' voluntary participation in the strike constituted voluntary underemployment and, thus, was not ground for finding a material change in circumstances warranting a reduction in child support.  She further asserts that if a modification review was warranted, the chancellor should have imputed income to Mr. Rawlings based upon his pre-strike wages.  This appeal presents issues of first impression in this Commonwealth.  Under the specific facts of this case and for the following reasons, we affirm the chancellor's decision.

The parties had divorced following a marriage which produced one child not emancipated at the time of the dissolution of the

*Justice Koontz prepared and the Court adopted the opinion in this case prior to his investiture as a Justice of the Supreme Court of Virginia.

marriage.  On December 8, 1993, Mr. Rawlings was ordered to pay three hundred forty-eight dollars and fifty-four cents ($348.54) in monthly child support to Mrs. Rawlings.  The child was then aged sixteen years, seven months.[1]

At the time of the parties' marriage and at all times thereafter, Mr. Rawlings was employed by Aerofin Corporation where he is a member of an AFL-CIO affiliated trade union.  On or before March 12, 1994, members of the union, including Mr. Rawlings, voted to undertake an approved strike.  Mr. Rawlings received strike pay and worked temporary jobs during the course of the strike, but nonetheless suffered a significant reduction in income.

While continuing to attempt to pay the required child support payments to the best of his ability, Mr. Rawlings petitioned the appropriate juvenile and domestic relations district court for a reduction in child support based upon his change in income.  The petition was denied and Mr. Rawlings appealed to the circuit court.  Following an ore tenus hearing, the chancellor determined that Mr. Rawlings' participation in the strike did not constitute voluntary underemployment.  The chancellor stated:

> . . . [Mr. Rawlings'] family began in . . . [the] early seventies as a union family.  At the time of . . . the divorce it was still a union family, [Mr. Rawlings] has a ninth grade education.  He's been a member of the union.  That has certain duties and obligations just like employment does.  Had he been a recent member, had

---

[1]At oral argument, it was established that the child is now emancipated.

most of the union ignored the union vote, gone back across the line, that would be one situation, but here this union doesn't strike much.  It's the only strike since the opening of the plant.  He's been a member of [the union].  The family has benefitted from the fact that he's been in the union.  So I think he does deserve a reduction.

I understand it's a hardship on everyone.  It's not a[n] . . . ideal situation, but it's part of the work environment he's been in and this family is in from the time . . . he began working at this plant.

The chancellor ordered a reduction in child support from the date of the original petition and continuing during the pendency of the strike to one hundred seventy-four dollars ($174.00) per month.  The parties were directed to calculate the appropriate arrearage, if any, based upon this amount and the amount actually paid during this time period.

We begin our analysis by noting that several other jurisdictions have held that participation in a legal strike warrants a reduction in the child support obligations of a parent.  See, e.g., Cohn v. Cohn, 461 N.E.2d 1028, 1031 (Ill. Ct. App. 1984)("respondent participated in the strike in 'good faith' and was therefore entitled to a reduction in child support reflective of his present ability to pay"); Sandra L. v. John L., 480 N.Y.S.2d 291, 293 (N.Y. Fam. Ct. 1984)("[t]he exercise of a federally protected right . . . may not be used against a worker to deny a reduction of his support obligation which would otherwise be granted for good cause"); see also O'Neal v. Wynn, 306 S.E.2d 822, 824 (N.C. Ct. App. 1983)(non-union member who lost employment after refusing to cross picket line was entitled

to reduction of child support), aff'd, 313 S.E.2d 159 (N.C. 1984); cf. Reep v. Reep, 565 So. 2d 814, 816 (Fla. Dist. Ct. App. 1990)("participation in a legal strike, accompanied by diligent efforts to seek reemployment, cannot be considered a voluntary reduction of income and may form the basis for a petition for modification of alimony").  But see Horn v. Horn, 650 N.E.2d 1103, 1107 (Ill. Ct. App. 1995)("the mere fact that an individual is on strike does not automatically require a trial court to reduce child support payments" because other factors, including obligor's good faith, may be considered).  These decisions rest upon two principles: the right of the obligor parent to participate in a lawful strike under federal and state statutes, see, e.g., Sandra L., 480 N.Y.S.2d at 293 (citing 29 U.S.C § 163 (1988)); Reep, 565 So. 2d at 816 n.4 (citing 29 U.S.C. § 163 and Fla. Stat. Ann. § 447.03 (West 1989)), and the good faith of the obligor parent in undertaking the strike for the long-term benefit of his continued employment.  See, e.g., Cohn, 461 N.E.2d at 1030.

While fully in accord with other jurisdictions in recognizing the right of an individual to join a union and participate in a legal strike under the National Labor Relations Act (NLRA), see 29 U.S.C §§ 157, 163 (1988), we further recognize that the right-to-work doctrine of this Commonwealth empowers an individual to maintain his employment during the pendency of a strike.  See Code §§ 40.1-53, -58.  Moreover, we find that the preemption doctrine giving supremacy to the NLRA does not usurp

-4-

the power of a state to require a union member to fulfill legal obligations unrelated to his or her union's collective bargaining activities. The potential of being required to maintain child support payments without reduction during the pendency of a legal strike is no different from other personal economic considerations which an individual union member must take into account when determining whether to vote for or honor a strike. No deliberate action by the state interferes with the individual's right to vote for and participate in union activity and collective bargaining; thus, the preemption doctrine has no application to the issue of this case. See, e.g., Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 749 (1985) (preemption doctrine does not apply to state statutes and causes of actions which do not directly interfere with primary purpose of NLRA to promote fair and equitable resolution of collective bargaining disputes). Accordingly, we hold that the fact that Mr. Rawlings was exercising a protected right in voting for and honoring the decision to strike neither mandates nor prohibits a reduction in his child support obligation.

Similarly, the reliance of other jurisdictions on the "good faith" of the obligor parent in participating in the strike has no application in this Commonwealth. In Antonelli v. Antonelli, 242 Va. 152, 409 S.E.2d 117 (1991), the Supreme Court held that "when the [obligor parent] . . . chose to pursue other employment, albeit a bona fide and reasonable business undertaking, the risk of his success at his new job was upon the

the [obligor parent], and not upon the children." Id. at 156, 409 S.E.2d at 119-20. Interpreting Antonelli, this Court has held "that the risk of reduction in income as a result of a parent's intentional act, even if done in good faith, is insufficient grounds for reducing the amount of support due under a pre-existing order." Hamel v. Hamel, 18 Va. App. 10, 13, 441 S.E.2d 221, 222 (1994)(emphasis added). Accordingly, while we concur in the chancellor's finding that Mr. Rawlings' decision to vote for and participate in the strike was consistent with the duties and obligations of union membership and done with good faith belief that it was for his and his family's ultimate benefit, that fact standing alone is insufficient to warrant a reduction in the child support due under the December 8, 1993 order.[2]

Nonetheless, we hold that the chancellor did not err in

---

[2]We reject Mrs. Rawlings' assertion that the record establishes that Mr. Rawlings was motivated to vote for and support the strike in order to avoid the remaining months of his child support obligation prior to his son's emancipation. To the contrary, the record amply supports the chancellor's determination that this was not the case. Mr. Rawlings pursued temporary employment to supplement his strike pay, continued child support within his ability to pay, and pursued the appropriate legal course in seeking a reduction in his child support obligation. Although the record shows that because of his seniority and position with his employer, he stood to gain little direct economic benefit from a positive resolution to the strike, the intangible benefits accruing to all union members from a positive resolution of the strike and the previous benefits he had received as a result of union membership corroborate Mr. Rawlings' assertion that his decision to support the union was a matter of principle arising from his loyalty to the union made after reflecting on the strike's impact upon his financial situation.

finding that under the facts of this case, Mr. Rawlings' decrease in income following the commencement of the union strike was a material change in circumstances invoking the court's continuing jurisdiction to modify its decree concerning his child support obligation. See Yohay v. Ryan, 4 Va. App. 559, 565-66, 359 S.E.2d 320, 324 (1987). Although that reduction in income was the result of a good faith intentional act on the part of the obligor parent, we distinguish this case from Antonelli on the ground that at all times during and following the marriage the well-being of the economic relationship between Mr. Rawlings and his former spouse and child was inexorably entwined with the economic fortunes of the union. Thus, the strike itself, notwithstanding Mr. Rawlings' voluntary actions in voting for and honoring the strike, constituted the material change in circumstances warranting review of his child support obligations.

The mere fact of a material change in the obligor parent's income, however, does not necessarily warrant a reduction in the existing child support obligation. The chancellor is required to consider all the factors and guidelines enumerated in the Code for making such determinations and enter an award appropriate to circumstances as they exist at that time. Watkinson v. Henley, 13 Va. App. 151, 156, 409 S.E.2d 470, 472-73 (1991); see also Yohay, 4 Va. App. at 566, 359 S.E.2d at 324; Keyser v. Keyser, 2 Va. App. 459, 461-62, 345 S.E.2d 12, 14 (1986).

Here, the amount of the reduction is supported by the record, unless, as Mrs. Rawlings asserts, the chancellor erred in

not imputing income to Mr. Rawlings based upon his pre-strike wages.  Accordingly, we turn now to that issue.

While there is some suggestion in the record that Mr. Rawlings could have refused to honor the strike and returned to work at the wage he had been previously earning, it is clear that the standard of living of the family established during and maintained following the marriage until the strike flowed directly from the long-term benefits of his union membership.  It is equally clear that the financial resources of the family were subject to fluctuation during a legal strike by the union.  Thus, Mr. Rawlings was not "underemployed" during the pendency of this strike.  Rather, the record shows that in addition to participating in union activities in order to receive strike pay, Mr. Rawlings also sought temporary employment appropriate to his skills and educational level in order to supplement his income and meet his support obligation.  Nothing in the record suggests that equivalent employment to Mr. Rawlings' prior position and wage level was available in the locality or that he could have secured such a position elsewhere.

For these reasons, the decision of the circuit court is affirmed.

Affirmed.