COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Humphreys, Russell and AtLee
Argued at Fredericksburg, Virginia

MICHAEL HUGH PALMER MURPHY

v.        Record No. 2270-14-4

CORIE ANN MURPHY

OPINION BY
JUDGE RICHARD Y. ATLEE, JR.
DECEMBER 8, 2015

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Jr., Judge

Adam D. Elfenbein for appellant.

Michael C. Miller (Cole Miller PLLC, on brief), for appellee.

Appellant Michael Hugh Palmer Murphy ("father") and appellee Corie Ann Murphy

("mother") divorced in 2013.  The Circuit Court of Prince William County ("the trial court")

modified their custody, visitation, and child support agreement in November 2014, reducing

mother's support obligation to reflect a reduction in annual salary from $170,000 to $108,000

after she changed jobs.  Father appeals the trial court's modification of mother's support

obligation, arguing that it abused its discretion in failing to impute an annual income of $170,000

to mother.  Father contends that mother is voluntarily under-employed and should be required to

pay child support based on an imputation of her prior income.  We disagree and affirm.

## I. FACTS

The parties divorced on December 20, 2013.  The divorce decree incorporated, but did

not merge, a marital settlement agreement ("the Agreement").  The parties have two minor sons,

born in July 2005 and October 2008.  Under the Agreement, father and mother shared joint legal

custody, and father had primary physical custody.  Father is a public school teacher.  At the time

of their divorce, mother made between $140,000 and $170,000 annually (an amount that varied because a substantial part of her income relied on commission) in a position that demanded long hours, including evenings and weekends. This position significantly limited the time the children spent with mother. After the divorce, mother took a position that offered traditional hours and the ability to work from home, but reduced her salary to approximately $110,000 per year. In addition, father was reassigned to another school, which required a much longer commute and required him to put the children in daycare before and after school.

Anticipating mother's change in employment, the Agreement specified that her taking a new position would constitute a material change in circumstances that would be sufficient to satisfy the first prong under <u>Keel v. Keel</u>, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983).[1] In April 2014, mother filed a petition to modify the Agreement, asserting that there had been a material change based upon her new job, father's new job, and the sale of the marital residence. She initially requested modification to joint physical custody and a reduced child support obligation, and later amended to ask for primary physical custody. The trial court *pendente lite* modified the visitation schedule, but father retained primary physical custody. In that order, the trial court did not modify mother's support obligation, imputing $170,000 in annual income to her. The final order entered on November 21, 2014 modified mother's income and support obligations to reflect her new salary, calculated to be $108,000 annually, and awarded joint physical custody.

---

[1] To modify custody, a court must ask "first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children." <u>Keel</u>, 225 Va. at 611, 303 S.E.2d at 921.

II. DISCUSSION AND ANALYSIS:  SUPPORT MODIFICATION AND IMPUTED INCOME

A. *Overview of the Law*

"In any proceeding on the issue of determining child support . . . the court shall consider all evidence presented relevant to any issues joined in that proceeding.  The court's decision in any such proceeding shall be rendered upon the evidence relevant to each individual case."  Code § 20-108.1.  In a modification proceeding, "[d]eviations from the presumptive support obligation [under Code § 20-108.2] must be supported by written findings which state why the application of the guidelines in the particular case would be unjust or inappropriate."  Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991).

One ground for deviation is the voluntary unemployment or under-employment of a party.  "Income may be imputed 'to a party who is voluntarily unemployed or voluntarily underemployed.'"  Brody v. Brody, 16 Va. App. 647, 650, 432 S.E.2d 20, 22 (1993) (quoting Code § 20-108.1(B)(3)).  A court may not impute income "to a custodial parent when a child is not in school, child care services are not available and the cost of such child care services are not included in the computation . . . ."  Code § 20-108.1(B)(3).  "The trial court's decision to not impute income to the mother will be upheld on appeal unless it is 'plainly wrong or unsupported by the evidence.'"  Bennett v. Va. Dep't of Soc. Servs., Div. of Child Support Enforcement ex rel. Bennett, 22 Va. App. 684, 691-92, 472 S.E.2d 668, 672 (1996) (quoting Sargent v. Sargent, 20 Va. App. 694, 703, 460 S.E.2d 596, 600 (1995)).

B. *The Trial Court's Discretion to Impute Income*

A handful of this Court's cases assert that a trial court is *required* to impute income whenever it finds a party is voluntarily unemployed or under-employed.  All of these cases were decided under the pre-2006-amendment version of Code § 20-108.1.  The 2006 amendments plainly supersede any "mandatory imputation" rule.  Moreover, none of these cases presented

- 3 -

facts—like those we see here—where a parent voluntarily took a position with a lower salary,[2] but provided other non-monetary benefits so that a court could find the move was in the best interest of the children. These prior statements requiring courts to impute income create unnecessary confusion, conflicting with both statutory and case law stating that such imputation is discretionary. The law does not require a trial court to impute income in all cases of voluntary under-employment, as this would usurp the discretion expressly granted to the trial court by the legislature. We take this opportunity to clarify this important issue.

*1. The origin and evolution of the "mandatory imputation" rule*

The case that most explicitly mandated imputation, and upon which subsequent cases rely, is Hamel v. Hamel, 18 Va. App. 10, 441 S.E.2d 221 (1994), in which this Court wrote:

> One of the grounds for deviation from the presumptive amount is the voluntary unemployment or underemployment of either parent. Code § 20-108.1(B)(3). *That code section does not expressly require the court to impute income to a parent found to be voluntarily unemployed, but such a reading is implicit both in the text of the statute itself and in this Court's prior opinions interpreting that text*. See, e.g., Brody v. Brody, [16] Va. App. [647], [649], 432 S.E.2d 20, 21 (1993). Code § 20-108.1(B) mandates that "the court shall consider all evidence presented relevant to any issue joined in that proceeding" and that its "decision shall be rendered upon the evidence relevant to each individual case." Clearly, "in setting an award of child support, the 'primary issue before a trial judge is the welfare and best interest of the child, not the convenience or personal preference of a parent.'" Brody, [16] Va. App. at [651], 432 S.E.2d at 22 (quoting Hur v. Dep't of Social Servs., 13 Va. App. 54, 60, 409 S.E.2d 454, 458 (1991)).

Id. at 12-13, 441 S.E.2d at 222 (emphasis added). Hamel failed to envision a scenario where a parent takes a position with a reduced salary, but the move is still in the best interest of the children. In sole support of the assertion that mandatory imputed income is "implicit" in the case

---

[2] There is no evidence in the record indicating that mother's reduced salary was not sufficient to meet the needs of the children.

- 4 -

law, Hamel cited Brody, a case in which the Court reversed and remanded "[b]ecause the trial court required the father to prove that the mother was 'voluntarily unemployed' and to prove the nature of the employment available to her . . . ." Brody, 16 Va. App. at 652, 432 S.E.2d at 23 (citing Code § 20-108.1(B)(3)). In other words, this Court reversed because the trial court misallocated the burden of proof.[3] Brody does not stand for the proposition that a court must impute income in all circumstances where a parent voluntarily makes a lower salary.

Hamel went on in its discussion of "implicit" mandatory imputation, stating that "case law holds that the risk of reduction in income as a result of a parent's intentional act, even if done in good faith, is insufficient grounds for reducing the amount of support due under a pre-existing order." Hamel, 18 Va. App. at 12-13, 441 S.E.2d at 222 (citing Antonelli v. Antonelli, 242 Va. 152, 155-56, 409 S.E.2d 117, 119-20 (1991)). This is not entirely accurate. In Antonelli, the Supreme Court reversed this Court when we overturned a trial court's imputation of income to a father. The father had taken a new job that initially appeared to have a similar income potential, but the new position (as a commissioned stockbroker) ultimately provided less income because of a market crash. Our Supreme Court held that the trial court did not err in choosing to impute his previous income. The judge was permitted to find that the father assumed the risk of making less money, and that risk should not be borne by his children.

---

[3] Brody is also commonly cited for the holding that a mother who leaves work to stay home with her children is nonetheless voluntarily unemployed and therefore subject to imputation. This holding is not unequivocal, however, and is best understood in view of the facts. In Brody, the mother quit her job to care for a child from her new marriage, not the children to whom she owed support. The parties had previously agreed to give the father (her ex-husband) sole custody of the children from her previous marriage. This Court emphasized that her decision to stop working was not in the best interests of the children to whom she owed a support obligation. In other words, leaving her job was "for the convenience or personal preference of a parent," "which operates to the detriment of [her] children." Brody, 16 Va. App. at 651, 432 S.E.2d at 22 (quoting Hur, 13 Va. App. at 60, 409 S.E.2d at 458). Again, this is plainly distinguishable from the facts here, where mother's new schedule permitted her to spend time with and be available for the children to whom she owes support. Moreover, mother continued to support them.

<u>Antonelli</u> did not hold that the trial court was *required* to impute, merely that the judge, "in the exercise of judicial discretion," was not prohibited from imputing income under those circumstances, and this Court erred in holding otherwise. <u>Antonelli</u>, 242 Va. at 156, 409 S.E.2d at 119. <u>Hamel</u>'s restatement of the holding ignored the posture of the case. This confusion was perpetuated in subsequent cases quoting <u>Hamel</u>. <u>See, e.g.</u>, <u>Niemiec v. Dep't of Soc. Servs., Div. of Child Support Enforcement ex rel. Niemiec</u>, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998); <u>Va. Dep't of Soc. Servs., Div. of Child Support Enforcement ex rel. Ewing v. Ewing</u>, 22 Va. App. 466, 471, 470 S.E.2d 608, 610 (1996); <u>Rawlings v. Rawlings</u>, 20 Va. App. 663, 669, 460 S.E.2d 581, 583 (1995).

In the last of this line of cases from the 1990s, this Court discussed mandatory imputation in <u>Bennett</u>, 22 Va. App. at 692, 472 S.E.2d at 672. To reiterate, under the Code, a court may *not* impute income "to a custodial parent when a child is not in school, child care services are not available and the cost of such child care services are not included in the computation . . . ." Code § 20-108.1(B)(3). In <u>Bennett</u>, the Court, after cursorily reviewing the holdings in <u>Hamel</u> and <u>Brody</u>, inverted the statute's language and stated that the "trial court *shall* impute income to a custodial parent who is voluntarily unemployed or underemployed where the age of the child and circumstances permit the custodial parent to be gainfully employed." <u>Bennett</u>, 22 Va. App. at 692, 472 S.E.2d at 672 (emphasis added) (citing Code § 20-108.1(B)(3)). That reversal from prohibition to mandate was a logical error unless one assumes it incorporated <u>Hamel</u>'s language on "implicit" mandatory imputation. Ultimately, <u>Bennett</u> held that the trial court did not abuse its discretion in declining to impute, distinguishing the facts before the Court from those in

Hamel and Brody.[4]  In other words, despite incorporating this mandatory language, Bennett held

that the trial court was *not* required to impute.

The mandatory imputation language finally resurfaced in Broadhead v. Broadhead, 51

Va. App. 170, 655 S.E.2d 748 (2008).  Broadhead provides a fairly comprehensive description of

previous case law addressing support modification:

> "Once a child support award has been entered, only a showing of a
> material change in circumstances will justify modification of the
> support award.  The moving party has the burden of proving a
> material change by a preponderance of the evidence."  Crabtree v.
> Crabtree, 17 Va. App. 81, 88, 435 S.E.2d 883, 888 (1993).  "[A]
> party seeking a reduction in support payments has additional
> burdens: 'He must make a full and clear disclosure relating to his
> ability to pay.  *He must also show that his lack of ability to pay is*
> *not due to his own voluntary act* or because of his neglect.'"
> Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261
> (1986) (emphasis added) (quoting Hammers v. Hammers, 216 Va.
> 30, 31-32, 216 S.E.2d 20, 21 (1975)).  Thus, in order to prove a
> material change in circumstances that justifies a reduction in
> support, a parent "must establish that he is not 'voluntarily
> unemployed or voluntarily under employed.'"  Antonelli v.
> Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (quoting
> Code § 20-108.1(B)(3)).

Id. at 179, 655 S.E.2d at 752 (quoting Ewing, 22 Va. App. at 470, 470 S.E.2d at 610).

Broadhead went on to describe the process for imputing income:

> In considering the appropriate amount of child support to be paid,
> "a trial court . . . is required to impute income to a parent who is
> found to be voluntarily underemployed."  Niemiec v. Dep't of Soc.
> Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) (citing
> Code § 20-108.1(B)(3)).  In deciding whether income should be
> imputed to a parent, and the amount of such imputed income, "the
> trial court must 'consider the [party's] earning capacity, financial
> resources, education and training, ability to secure such education
> and training, and other factors relevant to the equities of the
> parents and the children.'"  Blackburn v. Michael, 30 Va. App. 95,
> 102, 515 S.E.2d 780, 784 (1999) (quoting Niemiec, 27 Va. App. at

_____

[4] The child in Bennett was disabled and required high-level care, and the mother (who had not worked in ten years) needed to be available when called to take him home from school or daycare.  In addition, the Court held that the father failed to introduce evidence of any jobs available to mother, much less those providing the necessary flexibility.

> 451, 499 S.E.2d at 579).  The "court may [also] impute income based on evidence of recent past earnings." Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993).

Id.  Broadhead was decided under the pre-2006-amendment version of Code § 20-108.1,[5] and is the last case to reiterate a rule requiring imputation.

### 2. *The 2006 amendments and "good faith and reasonableness"*

Code § 20-108.1(B) lists reasons a judge may elect to deviate from the presumptive guideline amount, because these factors "affect[ ] the obligation, the ability of each party to provide child support, and the best interests of the child."  Code § 20-108.1(B).  As noted previously, one such factor permits imputing income "to a party who is voluntarily unemployed or voluntarily under-employed; provided that income may not be imputed to a custodial parent when a child is not in school, child care services are not available and the cost of such child care services are not included in the computation."  Code § 20-108.1(B)(3).  In 2006, the legislature added the following language:

> and provided further, that any consideration of imputed income based on a change in a party's employment *shall be evaluated with consideration of the good faith and reasonableness of employment decisions* made by the party, including to attend and complete an educational or vocational program likely to maintain or increase the party's earning potential[.]

Id. (emphasis added).  Although a judge need only make written findings if he or she elects to impute income, this amendment demonstrates that, in considering "relevant evidence," a judge must consider not only if a party is voluntarily under-employed, but also the good faith and reasonableness of the party's employment decision.  Imputation, therefore, cannot be mandatory in all cases of voluntary under-employment, as that would prevent a judge from performing this inquiry.

---

[5] The appellant in Broadhead conceded that the pre-amendment version governed because he filed his motion to reduce support before the 2006 amendments went into effect.

Even those cases containing "mandatory" language speak first in terms of permission and discretion. See Bennett, 22 Va. App. at 691, 472 S.E.2d at 672 ("A trial court *has discretion* to impute income to either or both the custodial or noncustodial parent who is voluntarily unemployed . . . ." (emphasis added)); Brody, 16 Va. App. at 650, 432 S.E.2d at 22 ("Income *may* be imputed 'to a party who is voluntarily unemployed or voluntarily underemployed.'" (emphasis added) (quoting Code § 20-108.1(B)(3)). These cases create avoidable confusion: on one hand, they say the trial court has discretion, and "may" impute income; on the other, they take that discretion away. There is no mistake in their results, but these statements regarding mandatory imputation muddy the law and deny judges the discretion the law affords them.[6]

## III. APPLICATION

The trial court here followed the procedure set out by the legislature. In considering the appropriate amount of support, the judge had an obligation to consider all the relevant evidence, including the advantages children receive from having two active and present parents, mother's availability in the event of emergencies, her ability to attend school events and take the children

---

[6] The facts before us reveal how requiring imputation in all cases of voluntary under-employment is illogical. Because mother is the parent seeking modification, she bears the burden to show that one or more material changes in circumstances warrant modification and that she is not voluntarily un- or under-employed. Despite the phrasing in Broadhead which seems to equate these two burdens, many circumstances aside from her reduced salary could be material, including some we see here (the sale of the marital residence and a change in the other party's employment). If mother meets the first burden, the trial court conducts modification proceedings to determine if and how it should modify support to address the changed circumstances.

Given that a modification proceeding is a "proceeding on the issue of determining child support," Code § 20-108.1, the trial court faces a rebuttable presumption that the guideline amount—under which the trial court must *not* impute—is correct. In order to deviate from that amount and impute income, the trial court must make written findings to support the decision to impute, and in doing so, must explain why the application of the guidelines would be unjust or inappropriate. If mother fails to prove that she is not voluntarily under-employed, and imputation is thus required, the trial court is then also required to make written findings justifying the decision to impute, despite the absence of supporting evidence. The logical absurdity in this vanishes if we dispense with the contradictory and confusing language mandating imputation.

to doctor's appointments, reduced child care costs, and the other benefits that flowed to the children from her flexible schedule. In addition, mother's reduced salary still provided a generous income. Once the trial judge determined that changed circumstances and the best interests of the children justified modifying the support amount, Code § 20-108.1 required him to calculate the support amount using, among other figures, mother's current salary. If he wished to impute her previous income, he would have been required to make express findings on the record to support the deviation from the presumptive amount. Imputing income is the exception, not the rule. The trial judge did not err in declining to do so. Furthermore, in considering whether to impute income, the judge was required to consider the "good faith and reasonableness" of mother's decision. The record presents numerous reasons he may have concluded her decision was both reasonable and in good faith. Accordingly, we see no error in the decision not to impute.

## IV. CONCLUSION

We find that the trial court did not err in declining to impute income to mother. Its decision was neither plainly wrong nor unsupported by the evidence. To the extent this Court has previously stated or implied that a trial court *must* impute income in any circumstance where a parent has voluntarily taken a position with a reduced salary, without regard for the good faith and reasonableness of the decision, or other factors affecting the best interests of the children, those holdings[7] are superseded by statutory amendment.

Affirmed.

---

[7] See Broadhead, 51 Va. App. 170, 655 S.E.2d 748; Niemiec, 27 Va. App. 446, 499 S.E.2d 576; Bennett, 22 Va. App. 684, 472 S.E.2d 668; Ewing, 22 Va. App. 466, 470 S.E.2d 608; Rawlings, 20 Va. App. 663, 460 S.E.2d 581; Hamel, 18 Va. App. 10, 441 S.E.2d 221.