COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Alston and Russell
Argued at Alexandria, Virginia

UNPUBLISHED

PHILIP P. WILSON

v.      Record No. 1044-17-4

HANA SLIVKA

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
APRIL 3, 2018

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

John L. Bauserman, Jr. (Steven A. Krieger; Steven Krieger Law,
PLLC, on briefs), for appellant.

Valerie E. Hughes (The Bowen Law Firm, on brief), for appellee.

Philip P. Wilson (appellant) argues that the trial court erred on four grounds: 1) that it

failed to calculate properly the presumptive amount of child support based upon appellant's

actual income, 2) that it failed to make written findings or incorporate findings as to why it

deviated from the presumptive guidelines, 3) that its calculation of appellee's actual gross

monthly income was arbitrary and capricious and not supported by credible evidence, and 4) that

it erred in awarding attorney's fees and costs to appellee. We disagree.

BACKGROUND

Appellant and Hana Slivka (appellee) were divorced on June 1, 2012. They share two

minor children, a daughter and a son. In February of 2016, appellee filed a motion to increase

child support, and in March of 2016, a petition for a rule to show cause against appellant for not

making court-ordered payments with the Circuit Court for the County of Arlington (trial court).

--------
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The trial court set the hearing for April 1, 2016. On that day, the trial court continued the matter for review in six months. Appellee then nonsuited her February motion to increase child support after appellant pleaded with her that he "wanted to have peace for awhile." The order to nonsuit was entered. On June 7, 2016, appellant filed a praecipe and a motion to redetermine allocation of medical reimbursement payments. The next day, appellee submitted a motion to increase child support; appellant's child support obligation at the time was $1,680 per month. Appellant filed an answer to appellee's motion to increase child support and a cross-motion for redetermination of child support and medical expenses. Then, appellant filed a motion to modify child support on September 22, 2016. These proceedings came before the trial court on May 11, 2017.[1]

At the hearing, appellant testified that the basis for his motion was that he was "laid off from [his] job, [due to a] reduction of force" on August 31, 2016. Appellant attempted to establish his position in a severance letter from his employer. Appellant has been unemployed since September 1, 2016. Appellant testified about his employment search, noting that he applied to over 100 jobs and completed twenty-five interviews. Appellant applied for positions above and below his previous salary range and for temporary, part-time, and full-time work in addition to freelance positions. He explained that he was unable to find employment because the advertising industry evolved, making his skillset obsolete. Appellant did not undertake additional education to improve upon or diversify his skills, citing insufficient funds. He considered returning to teaching but has not renewed his license. He also did not apply for administrative or secretarial work because he had a hand injury and was not familiar with the necessary programs.

---

[1] This analysis will be confined to the motions regarding child support, as those are relevant to the assignments of error on appeal; however, references will be made to the children's health insurance and medical expenses when relevant.

Appellant testified about his income. In 2015, appellant earned a salary of $138,000.[2] In 2016, appellant earned an annual salary of $141,600 at Sensis.[3] As of September 1, 2016, appellant represented that he earned $0 in income; he had to take out a loan. While unemployed, appellant applied for and received weekly unemployment benefits of approximately $400 but "those ran out several weeks ago." Appellant admitted that he received money from Sensis after August 31, 2016. Sensis issued appellant two checks totaling approximately $22,941.[4] In addition, as of September 2016, appellant indicated in his monthly income and expense statement that he had $11,000 in liquid assets. He also received $11,354 in tax refunds on March 21, 2016.

Regarding appellant's expenses, his obligation to pay $2,000 per month in spousal support to appellee terminated in September 2015. Appellant did not maintain the children's medical insurance since 2015. Appellant has still not complied with a court order directing him to pay for the children's care over the summer of 2016. He had previously "pa[id his] mother for promissory notes" but stopped paying her after November 2016 and did not pay his portion of his children's medical expenses since December 2016.[5] Other personal expenses include that

---

[2] Appellant initially testified that his salary was about $126,000 which is reflected in his 2015 tax return. He then explained that after a six-month evaluation, he received a raise of $1,000 per month.

[3] Appellant initially testified that he earned between $115,000 and $120,000 at Sensis.

[4] Check one included his last paycheck for 96 hours-$6,535 and his accrued paid time off for 81 hours-$5,514, totaling $12,049. Check two was his severance pay-$10,892.

[5] At this point in the proceeding, appellant objected to appellee's imputation argument because that was not divulged to appellant until the week prior to trial. The trial court sustained the objection.

appellant paid $1,500 in rent.[6]  His wages had been garnished; "half of every paycheck went to [appellee]."  Appellant paid $173 per month for an eHarmony subscription and continued to dine out.

In appellee's case in chief, appellee testified that she started her staging real estate company, Euro Staging, in 2012.  The number and scale of her projects per client fluctuated; she now has about 50 clients and does numerous projects per client.  Appellee testified that her actual gross income per month in 2015, 2016, and 2017 was about $1,000.[7]  Appellee testified that these income figures from her profit and loss statements were mostly accurate because she used Quickbooks, and that program reflected invoice payments instantaneously.  Appellee anticipated additional income of $7,900 in unpaid invoices in 2017, but these would not have appeared in Quickbooks as they were unpaid.  Appellee further testified that these net income sums did not reflect her actual gross income because she also had additional expenses and debts.

She also testified about her business expenses.  She paid almost $19,000 in legal and professional fees in 2016 and has spent over $3,000 on those services in 2017; those services include the hourly salaries of her assistant stagers and her accountant.  In addition, larger projects required appellee to hire moving companies.  Appellee indicated that in 2016, storage costs were about $10,000 for the year.  As of 2017, her current storage cost is $1,500 per month.[8]  Appellee

---

[6] Appellant testified that his expenses changed after submitting his 2016 income and expense statement, but he failed to update the document.  The trial court noted that the use of the document was limited to the date on the document, September 19, 2016.

[7] In 2015, her profit and loss statement showed that her annual gross income was approximately $72,300, her expenses were $54,700, so her net income was $17,600.  In 2016, her profit and loss statement showed that her annual gross income was about $115,000, her expenses were $91,000, and consequently, her net income was $24,000.  From January 2017 to May 2017, her profit and loss statement reflected that appellee's gross income was $34,600, her total expenses were $16,600, and so her net income was $18,000.

[8] Appellee's 2017 profit and loss statement reflected that she paid only $2,735 in storage so far.  She attributed that error to her bookkeeper.

noted that since the profit and loss statement was submitted, her 2017 storage costs increased because she acquired more storage units. Appellee is growing her business; consequently, her storage expenses have and will continue to rise. She is under contract for a new storage facility, and because it was twice the size of her current storage space, appellee projected that her storage costs will also double. To ready the facility, she anticipates additional expenses, such as the purchase and installation of industrial shelving. Appellee next testified that growing her business requires a larger inventory so that she can take on additional projects. According to her 2016 profit and loss statement, appellee spent $38,000 on inventory. Thus far in 2017, appellee purchased $4,600 in inventory. Other 2016 business expenses include $1,400 in client gifts (gift cards) for referrals, $1,800 for education and training in online courses and at the real estate agent association summit, and $1,400 in meals and entertainment for food at conferences and lunches with clients.

She then detailed her personal expenses. Appellee argued that because she has primary custody of the children and because the children no longer spend time with appellant, her personal expenses for their care increased. Another consequence of her circumstances was that appellee's ability to meet her client's needs decreased. Appellee takes the children to all of their appointments and organized and paid for the children's care while she works. Appellee covered the cost of the children's care in the summer of 2016, and although appellant was ordered to reimburse her, he did not do so. Appellee had already incurred over $200 in child care expenses in 2017. She anticipated that child care costs for the summer will be $3,000. Appellee and her new husband pay for her children's extracurricular activities. She also pays $299 per month for the children's health insurance. The children's medical expenses have increased over time; the daughter broke and dislocated her shoulder and the son has scoliosis which requires weekly chiropractic treatment. According to appellee, appellant has not maintained the children's

medical insurance since 2015 and has not paid his share of the children's medical expenses since December 2016. Appellant's history of noncompliance is not new. Appellant's child and spousal support payments were sporadic, resulting in appellee filing a show cause against appellant. The show cause hearing culminated in an order requiring appellant to pay appellee a lump sum of $51,000 in March 2015. Appellee also owes fees to the guardian *ad litem* (GAL) and her attorney.

Appellee and her husband or both pay these expenses. Her husband pays rent on the home where she, her husband, and the two children live (rent was $3,000 in 2015 and is now $3,150 per month.). Appellee pays for groceries, the car loan, gasoline, repairs and parking, property tax, child care, clothing, personal care, and school supplies. Both appellee and her husband pay for the children's lunch money, sports lessons, insurance, and appellee's GAL fees, Wayfair, TJX, American Express, and BB&T fees. Her Wayfair, TJX, and one BB&T card are solely for her staging business, and two BB&T cards and one American Express card are for her personal use. She pays as much as she can on her credit obligations depending on funds available. Appellee has "max[ed]" out her credit cards. She has called the hospital and doctor's offices to negotiate payment of her children's medical bills. On one occasion, the children were told to leave the doctor's office because of appellee's inability to pay.

Both parties argued for attorney's fees. Appellee contended appellant did not produce his affidavit in discovery. Appellee, through counsel, then submitted her affidavit supporting attorney's fees which were billed at the hourly rate of $395. She noted that the parties were currently in court after appellant pled for peace. Appellee complied and nonsuited her motion to increase child support only to have appellant subsequently file his motion.

In closing arguments, appellant requested that the trial court find that his actual gross income was $0, and accordingly, that his child support obligation would be $104. Appellee

asserted that appellant had "unclean hands" and that he frustrated the discovery process. She further noted appellant's affidavit for attorney's fees included hours billed for the visitation case. Appellee then requested attorney's fees.

In its ruling, the trial court discussed appellant's noncompliance in paying his support obligations. Then, the trial court stated that appellant "has the ability to work [based on his resume and work experience] and has demonstrated that over time." The trial court emphasized that appellant "has now for a very long time not paid what . . . he should have been paying." Although appellant was ordered to pay $1,680 in child support, the parties did not contemplate the change in circumstance that "the children [would be] with [appellee] all the time." The trial court then calculated appellant's actual gross income and stated the most "accurate reflection of his worth" was $141,600, which was appellant's income from the previous year. The trial court considered that as of September 19, 2016, appellant had liquid assets on hand of $11,000, and that appellant failed to pay child care expenses from last summer in contravention of a court order.

In addition, the trial court found that appellee's actual monthly income was $1,000. The trial court noted that appellee "adequately and substantially explained what her income [was], [and] what her business [was] doing." Factors supporting the income calculation included: custody arrangements have substantially changed resulting in increased expenses and appellee was expanding her business resulting in increased expenses. The trial court also considered appellee's tax returns, the current trajectory of her business, and her reasonable business expenses. The trial court awarded appellee attorney's fees "because [appellant] was not the prevailing party."

In its order, the trial court stated how it calculated appellant's actual gross income. Even though appellant represented that he did not earn income, the trial court considered appellant's

2016 income and expense statement, in which appellant indicated "he had $11,000[] in a bank account[, in addition to] that [appellant] had earned $141,600[] annually, and [that he] was receiving money from his prior employer through September, 2016." When calculating appellee's actual gross income, the trial court found that she earned an average of $1,000 and noted that she "pays $299[] a month to maintain health insurance coverage for the children . . . [and] pays a monthly average of $267[] for work related day care . . . ." The trial court then stated appellant's support obligations were reflected in the guidelines worksheet attached to the order. The trial court denied appellant's motion, granted appellee's motion, and ordered appellant to pay appellee $2,223 in child support per month. The trial court concluded by ordering appellant to pay appellee's attorney's fees in the sum of $15,910.29.

Appellant filed a motion to reconsider which the trial court denied. Now comes this appeal.

ANALYSIS

A. Assignments of Error 1 and 2: Appellant's Actual Gross Income and Written Findings

Generally, when reviewing a trial court's child support determination, it

> "is a matter of discretion for the [trial] court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." Oley v. Branch, 63 Va. App. 681, 699, 762 S.E.2d 790, 799 (2014). Child support decisions, like "[s]pousal support determinations[,] typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (quoting McKee v. McKee, 52 Va. App. 482, 489, 664 S.E.2d 505, 509 (2008) (en banc)). The [trial] court's discretion, however, is not without bounds. The General Assembly has included mandatory steps that a court must follow when exercising its discretion in calculating child support. See generally Code § 20-108.1. As a result, the [trial] court's calculation of child support obligations is a combination of mandatory steps and broad discretion. "[U]nless it appears from the record that the [trial] court . . . has abused [its] discretion by not considering or by misapplying one of the statutory mandates, the child support award

- 8 -

will not be reversed on appeal." Milam v. Milam, 65 Va. App. 439, 451, 778 S.E.2d 535, 541 (2015).

Niblett v. Niblett, 65 Va. App. 616, 624, 779 S.E.2d 839, 842-43 (2015).

To calculate child support obligations,

> [t]he starting point . . . is the amount as computed by the schedule found in Code § 20-108.2(B). This amount is determined according to a schedule that varies according to the combined gross income of the parties and the number of children involved. *No additions or subtractions from the gross income, as defined in Code § 20-108.2(C), even if otherwise valid considerations, may be made before this figure is determined.*

Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991) (emphasis added).

We recognize that "[o]nce a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award." Milam, 65 Va. App. at 452, 778 S.E.2d at 541 (quoting Crabtree v. Crabtree, 17 Va. App. 81, 88, 435 S.E.2d 883, 888 (1993)). "The moving party has the burden of proving a material change by a preponderance of the evidence." Crabtree, 17 Va. App. at 88, 435 S.E.2d at 888. "A party seeking a reduction in" child support must also "'make a full and clear disclosure relating to his ability to pay. [The party] must also show that [their] lack of ability to pay is not due to [their] own voluntary act or because of [their] neglect.'" Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986) (quoting Hammers v. Hammers, 216 Va. 30, 31-32, 216 S.E.2d 20, 21 (1975)).

Here, the trial court first found that there was a material change in circumstances; that the children no longer spent time with appellant. The trial court found that necessarily resulted in an increase in expenses for appellee. The trial court noted appellant sporadically paid his alimony and child support obligations until ordered to pay a lump sum of over $51,000 to appellee in 2015. Appellant's noncompliance persisted in that he disobeyed a court order to reimburse appellee for child care expenses incurred over the summer of 2016 and failed to maintain the

- 9 -

children's health insurance and pay his portion of their medical expenses. Further, according to the trial court's evaluation of appellant's resume and work experience, appellant did not secure gainful employment at a level commensurate with his ability.

Moreover, the trial court did not err in its calculation of appellant's child support obligation. The trial court first determined appellant's actual gross income. Although appellant represented he received $0 in income, evidence indicated that he received over $20,000 from Sensis in severance, paid time off, and salary after August 31, 2016. Appellant also had $11,000 in liquid assets. The record reflected that appellant received $141,600 in income in 2016; this was the amount the trial court believed most accurately represented appellant's income. The trial court then indicated that the child support guidelines worksheet submitted by appellee was correct because it was based on appellant receiving an income of $141,600. Accordingly, appellant's support obligation was set at $2,223 per month.

Appellant then contended that that the trial court deviated from the presumptive amount.

> *[A]fter determining the presumptive amount of support according to the schedule, the trial court may adjust the amount based on the factors found in Code §§ 20-107.2 and 20-108.1. Deviations from the presumptive support obligation must be supported by written findings which state why the application of the guidelines in the particular case would be unjust or inappropriate. If the applicability of the factors is supported by the evidence and the trial [court] has not otherwise abused [its] discretion, the deviation from the presumptive support obligation will be upheld on appeal.*

Richardson, 12 Va. App. at 21, 401 S.E.2d at 896 (emphasis added).

One such ground for deviation is imputation of income. Code § 20-108.1(B)(3). "The burden is on the party seeking the imputation to prove that the other parent was voluntarily foregoing more gainful employment." Joynes v. Payne, 26 Va. App. 401, 421, 551 S.E.2d 10, 19 (2001) (quoting Niemiec v. Dep't of Soc. Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998)). A trial court is permitted to impute income when "a party . . . is voluntarily unemployed

or voluntarily under-employed[; in addition,] any consideration of imputed income based on a change in a party's employment shall be evaluated with consideration of the good faith and reasonableness of employment decisions." Murphy v. Murphy, 65 Va. App. 581, 590-91, 779 S.E.2d 236, 240 (2015) (emphasis omitted) (quoting Code § 20-108.1(B)(3)). It is well-settled that "[i]n setting an award of child support, the 'primary issue before a trial [court] is the welfare and best interests of the child, not the convenience or personal preference of a parent.'" Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993) (quoting Hur v. Dep't of Soc. Servs., 13 Va. App. 54, 60, 409 S.E.2d 454, 458 (1991)). As such, "a parent may not 'purposefully choose to pursue a low paying career which operates to the detriment of [the parent's] children.'" Id. "[T]he trial court must consider the parent's earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children.'" Niblett, 65 Va. App. at 629, 779 S.E.2d at 845 (quoting Mir v. Mir, 39 Va. App. 119, 129, 571 S.E.2d 299, 304 (2002)).

This Court's holding in Floyd v. Floyd, 17 Va. App. 222, 436 S.E.2d 457 (1993), is noteworthy in the calculation of actual gross income instead of imputation of income. Floyd argued that the trial court imputed income to him before calculating the presumptive amount. Id. at 224, 436 S.E.2d at 458. This Court indicated that Floyd "mischaracterized the proceedings;" what the trial court did was calculate Floyd's actual gross income. Id. at 229, 436 S.E.2d at 461. The trial court indicated that it found his annual income to be $45,000 "based on the depositions of prior years, the statement in testimony and the statement of money taken out of the business." Id. at 225, 436 S.E.2d at 459. The trial court first considered that Floyd engaged in a "systematic scheme to hide assets," had cashed and spent $70,000 in checks, and then determined his child support obligation pursuant to the guidelines. Id. at 229, 436 S.E.2d at 461.

While the trial court is permitted to deviate from the presumptive amount, it did not do so here. The trial court simply calculated appellant's gross actual income and adhered to the corresponding presumptive amount of child support.[9] This is analogous to Floyd, 17 Va. App. at 222, 436 S.E.2d at 457. The record leaves little room for doubt that the trial court found appellant's representations less than credible. It noted his "poor track record" and highlighted his chutzpah in asking for an outright elimination of his support obligation in light of the trial court's extensive familiarity with this case and its facts. Based on the evidence before it, the trial court concluded that appellant's last known salary of around $141,600 constituted an "accurate reflection of his worth." Accordingly, the trial court did not "impute" income; rather, it weighed the evidence and credibility to determine appellant's income. The trial court properly applied the statutory steps and did not deviate from the presumptive amount. Accordingly, no written findings were required. Those determinations were not plainly wrong and were supported by the evidence. Thus, we will not disturb those findings on appeal.

## B. Assignment of Error 3: Appellee's Actual Gross Income

"Decisions concerning both [spousal and child] support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994) (citing Young

---

[9] Contrast this with our holding in Ryan v. Kramer, 21 Va. App. 217, 463 S.E.2d 328 (1995). This case is instructive on the issue of imputation of income. There, the trial court first noted that Ryan (husband) had been employed as a pilot who "voluntarily accepted early retirement January 1, 1994 at age 51." Id. at 219, 463 S.E.2d at 329. As a pilot, he earned $12,442 per month. Since retirement, Ryan was a real estate agent earning $0 income during 1994. Id. Wife did not work at the time the pair divorced until the trial date. Id. She had legal and physical custody of their son. Id. The trial court noted that husband's child support obligation would be $7.91 if his income were $0. Id. The trial court then stated that "the application of the [g]uidelines is unjust and inappropriate for the reason that [husband's] average gross monthly income for 1993 of $12,344[] ought to be imputed to him, he having voluntarily terminated his employment." Id. This Court held that "the evidence sufficiently supports the trial court's finding of fact, and that it did not err when it found that husband voluntarily left his employment." Id.

v. Young, 3 Va. App. 80, 81, 348 S.E.2d 46, 47 (1986)).  In addition, "[t]he trial court's decision, when based upon credibility determinations made during an *ore tenus* hearing, is owed great weight."  Douglas v. Hammett, 28 Va. App. 517, 525, 507 S.E.2d 98, 102 (1998).

When calculating actual gross income, pursuant to Code § 20-108.2(C), actual gross income "includes 'all income from all sources.'  By definition . . . , business expenses . . . are not income.  The statute expressly provides that reasonable business expenses shall be deducted from income for a self-employed person in determining gross income."  Calvert, 18 Va. App. at 785, 447 S.E.2d at 877 (quoting Code § 20-108.2(C)).

Appellee testified that her monthly actual gross income was $1,000.  She supported her testimony with profit and loss statements, income and expense statements, and tax forms. Appellee explained that her profit and loss statements did not accurately reflect expenses she actually incurred.  Appellee testified in detail about both her business and personal expenses. The trial court deemed appellee's testimony credible and found appellee's monthly actual gross income to be $1,000.  That determination was not plainly wrong and was supported by credible evidence.  Thus, we will not disturb that finding on appeal.

C.  Assignment of Error 4:  Attorney's Fees

An award of attorney's fees is "reviewable on appeal only for an abuse of discretion." Cirrito v. Cirrito, 44 Va. App. 287, 299, 605 S.E.2d 268, 274 (2004) (quoting Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003)).  "Given the unique equities of each case, our appellate review steers clear of inflexible rules and focuses instead on reasonableness under the circumstances."  Id. (internal citation omitted).  "[R]elative financial abilities and support issues should be considered as factors in weighing the equities.  However, these factors are not exclusively determinative of whether an award should or should not be made."  Id. at 300, 605 S.E.2d at 274.

> In determining whether a party has established a *prima facie* case of reasonableness, a fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

Chawla v. BurgerBusters, Inc., 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998) (citing Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship., 253 Va. 93, 97, 480 S.E.2d 471, 473 (1997)).

The trial court awarded attorney's fees to appellee noting that appellant was "not the prevailing party." Appellant seized upon this phrase, arguing that this Court must adhere to the "American rule;" that rule provides that "ordinarily attorneys' fees are not recoverable by a prevailing litigant in the absence of a specific contractual or statutory provision to the contrary." Mayer v. Corso-Mayer, 62 Va. App. 713, 733, 753 S.E.2d 263, 272 (2014) (quoting Lannon v. Lee Conner Realty Corp., 238 Va. 590, 594, 385 S.E.2d 380, 383 (1989)).

> "In Virginia, Code §§ 20-79(b) and [former] 20-99(5) provide the statutory basis for the broad discretionary authority [trial] courts have to award attorney's fees and other costs as the equities of a divorce case and its ancillary proceedings may require." Tyszcenko v. Donatelli, 53 Va. App. 209, 222, 670 S.E.2d 49, 56 (2008). "This discretionary authority also extends to related post-divorce proceedings." Id. (citations omitted). Significantly, however, "*there is no prevailing-party entitlement* to fees under Code §§ 20-79(b) and [former] 20-99(5)." Id. at 223, 670 S.E.2d at 57 (emphasis added). "Instead, the trial court, in the exercise of its discretion, may award attorney's fees and costs to 'either party as equity and justice may require.'" Id. (quoting what is currently Code § 20-99(6)).

Id. at 733, 753 S.E.2d at 272-73.

Viewing the evidence in the light most favorable to appellee as she prevailed below, id. at 734, 753 S.E.2d at 273, the trial court considered the parties' testimony, the parties' affidavits, and evidence from trial. Appellee testified that appellant requested that she withdraw her motion

to increase child support to "keep the peace." Appellee did so. Appellant was the cause of this litigation because he refiled his motion, causing appellee to file her respective motion. The trial court was familiar with appellant's history of noncompliance in paying his support obligations. Further, appellant did not produce his affidavit supporting attorney's fees in discovery. Appellee did, and her affidavit included her attorney's rate, time entries, and invoices. Notwithstanding the trial court's passing reference to appellant not being the "prevailing party," the trial court did not abuse its discretion in awarding fees. Accordingly, we will not disturb the trial court's award of attorney's fees to appellee.

We decline to award attorney's fees on appeal as the litigation "addressed appropriate and substantial issues and that neither party generated unnecessary delay or expense in pursuit of its interests." Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004).

CONCLUSION

The trial court did not err. The trial court adhered to the statutory scheme and correctly calculated appellant's actual gross income. The trial court did not deviate from the presumptive guidelines amount nor did it impute income to appellant. Thus, no written findings were required. The trial court's finding that appellee's actual gross income was $1,000 was not plainly wrong and was supported by credible evidence. Finally, the trial court did not abuse its discretion when it awarded attorney's fees.

Affirmed.